NORTH OLMSTED BOARD OF EDUCATION, APPELLEE, ET AL.,
*v.* CUYAHOGA COUNTY BOARD OF REVISION; NORTHERN
VIEW APARTMENTS, APPELLANT.

[Cite as *N. Olmsted Bd. of Edn. v. Cuyahoga Cty.
Bd. of Revision* (1996), 75 Ohio St.3d 595.]

(No. 95–694—Submitted December 14, 1995—Decided June 12, 1996.)

596

*Kolick & Kondzer, Thomas A. Kondzer* and *Rita M. Jarrett,* for appellee North Olmsted Board of Education.

*Fred Siegel Co., L.P.A.,* and *Annrita S. Johnson,* for appellant.

*Per Curiam.* Northern View, in its first proposition of law, claims that Canitia is not an independent fee appraiser because he (1) represents, almost exclusively, school boards in Cuyahoga County, (2) has not obtained a real estate appraisal certificate from Ohio under R.C. Chapter 4763, (3) improperly collected and verified data for his report, and (4) improperly treated information in preparing his report. We reject these claims.

As to whether Canitia must obtain a certificate as a real estate appraiser before he can testify about his opinion of value, R.C. 4763.13(F) states:

"Nothing in this chapter shall preclude a person who is not licensed or certified under this chapter from appraising real estate for compensation."

Thus, an individual may testify before the BTA about the appraisal of real estate without being certified under R.C. Chapter 4763 if he is otherwise qualified, as determined by the BTA. The remainder of Northern View's claims under this proposition aim at Canitia's credibility and the weight to be given his testimony and report. The BTA had a firsthand opportunity to observe Canitia's testimony; it may grant credibility and weight to his testimony and his report. *Witt Co. v. Hamilton Cty. Bd. of Revision* (1991), 61 Ohio St.3d 155, 573 N.E.2d 661. Here, the BTA accepted major sections of his report and adjusted other sections. It received no competing testimony from Northern View. We do not find that it abused its discretion in granting weight and credibility to Canitia's testimony and report. *Id.*

In its second proposition of law, Northern View argues that the BTA's selection of market rents, vacancy rate, and capitalization rate is not supported by sufficient, probative evidence. We disagree.

According to the testimony, Canitia based his rentals on the asking rents in 1994 and trended them to the year of valuation, 1991. He testified that he "went to market and adjusted the rentals in accordance with what I considered to be market rents." He did not provide a survey of market rents.

This evidence is probative enough to support the BTA's adoption of Canitia's rental income. *S. Euclid/Lyndhurst Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1996), 74 Ohio St.3d 314, 658 N.E.2d 750. The BTA accepted Canitia as an expert appraisal witness and may believe his testimony on these adjustments. While the BTA could have selected the actual income presented in the income statements, Northern View did not present anyone to testify about these amounts, nor did it present an appraiser to testify about market rents.

As to the vacancy rate, Canitia testified that each time he asked the property managers about vacancies, no apartments were immediately available. He, accordingly, applied a low rate. This evidence supports the BTA's vacancy-rate

finding.  The BTA rejected Northern View's vacancy study, supporting a higher rate, because no one explained why it was so high.

Next, as to the capitalization rate, Northern View contends that the BTA should have rejected Canitia's nine-percent capitalization rate because it was from an annual survey which was not current.  Instead, Northern View asserts that the BTA should have selected a rate for a time period closer to the valuation date.  It asserts that the BTA should have employed a first quarter 1991 rate according to a study contained in the record, which indicated an average capitalization rate of 9.9 percent for northeastern Ohio.  However, no one testified positively for the use of this rate.  Northern View fails because it failed to present evidence rebutting Canitia's testimony.

Finally, in its third proposition of law, Northern View contends that the true value found by the BTA is in excess of the evidence presented, claiming that the BTA ignored *Ridgeview Ctr., Inc. v. Lorain Cty. Bd. of Revision* (1989), 42 Ohio St.3d 30, 536 N.E.2d 1157.  Again, we disagree.

In *Ridgeview Ctr.,* the BTA's finding was much higher than the opinion of any of the witnesses, and nothing in the administrative record supported the BTA's decision.  Furthermore, the BTA did not state what evidence in the record prompted its decision.

In this case, the BTA applied numbers testified about by Canitia and other numbers contained in the record, including the administrative record.  In fact, its true-value decision is a little less than the value indicated under Canitia's income approach.  Most important, the BTA explained how it reached its value.  We find no error under this proposition of law.

Accordingly, we affirm the BTA's decision because it is reasonable and lawful.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and COOK, JJ., concur.

PFEIFER, J., dissents.

WRIGHT, J., not participating.

PFEIFER, J., dissenting.  Among the factors in this case upon which the parties disagree, the one that makes the biggest difference in the valuation of Northern View Apartments is the vacancy rate.  The Board of Tax Appeals should have accorded more weight (*some* would have been more) to the *actual* vacancy rate instead of relying on the appraiser's opinion of what the vacancy rate should be or would be if the building were managed better or in another location.  To me, the best evidence of an apartment building's vacancy rate is its vacancy rate.  We do not live in a world of theoretical vacancy rates; rather we live in a world where apartments are either rented or vacant.  When they are vacant, the Board

of Tax Appeals should treat them accordingly. I dissent because the Board of Tax Appeals did not use the best available evidence of Northern View Apartments' vacancy rate.