[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 595.]

NORTH OLMSTED BOARD OF EDUCATION, APPELLEE, ET AL., *v*. CUYAHOGA
COUNTY BOARD OF REVISION; NORTHERN VIEW APARTMENTS, APPELLANT.
[Cite as *N. Olmsted Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*,
1996-Ohio-452.]

*Taxation—Real property valuation—Board of Tax Appeals' determination of true
value of two-story apartment complex not an abuse of discretion, when.*

(No. 95-694—Submitted December 14, 1995—Decided June 12, 1996.)

APPEAL from the Board of Tax Appeals, Nos. 93-A-347 and 93-A-348.

———————————

{¶ 1} Northern View Apartments, appellant, owns a one-hundred-suite apartment complex at the corner of Brookpark and Columbia Roads in North Olmsted. The two-story apartment complex was built in 1965 and 1969 and contains forty-eight "extra-large" two-bedroom suites, having an area of eight hundred square feet, and fifty-two two-bedroom suites, having seven hundred fifty square feet. The complex also contains a laundry room with eight dryers and eight washers and an air-conditioned exercise room. The complex sits on 4.98 acres of land.

{¶ 2} For tax year 1991, Northern View filed a complaint with the Cuyahoga County Board of Revision ("BOR"), seeking to reduce the true value from $2,754,000, as assessed by the Cuyahoga County Auditor, to $2,025,000. The North Olmsted Board of Education ("BOE"), appellee, and the city of North Olmsted filed a counter-complaint seeking to increase the value to $2,800,000.

{¶ 3} At or before the BOR hearing, Northern View submitted income and expense statements for 1989 through 1991, a January 31, 1991 rent roll, and a chart showing monthly vacancies for 1990 through 1992. Northern View's attorney also presented an "Owner's Opinion of Value" to the BOR; however, neither the owner

nor an appraiser testified at the hearing as to the value of the property. The BOE and North Olmsted offered the testimony and "Appraisal Report and Valuation Analysis" of Sam D. Canitia, an expert real estate appraiser, who attested to the $2,800,000 figure. The BOR determined the value to be $2,137,628, and North Olmsted and the BOE appealed this decision to the Board of Tax Appeals ("BTA").

{¶ 4} At the BTA, the BOE and North Olmsted presented the testimony and appraisal report of Canitia. Canitia testified about the market and income approaches to value. Under the market approach, he determined the value to be $2,750,000 and, under the income approach, $2,953,000. He gave greater weight to the market approach, but found the income approach supported the market approach. Finally, he concluded the true value of the property to be $2,775,000. Northern View did not present any appraisal testimony to the BTA.

{¶ 5} In addressing the evidence, the BTA found that the income approach was the most appropriate and reliable method to value the property because it is "property-specific." It found no error in the amounts Canitia attributed to gross potential income, vacancy, and capitalization rate, finding these amounts to be supported by evidence in the record. However, it changed two elements of Canitia's income approach. First, it reduced miscellaneous income generated from the laundry room from $12,500 to $7,000. The BTA ruled that the property owner's income statements supported the lower amount. Second, the BTA included an $8,000 reserve for replacement. It did so because the historical information contained in the owner's opinion of value and the auditor's income approach, displayed on the property record cards, supported such an expense category.

{¶ 6} The BTA also questioned information presented by Northern View to the BOR. First, it refused to attribute much evidentiary weight to any information submitted to the BOR after April 24, 1992. This was the date on which the property owner signed an affidavit attesting to the truth and correctness of information supplied to its counsel. Moreover, the BTA questioned information predating the

affidavit. It also doubted the owner's opinion presented to the BOR because the opinion had no foundation and because no other competent, probative evidence in the hearing before the BTA supported the opinion.

{¶ 7} In finalizing a true value under the income approach, the BTA pointed out the disparity between Northern View's vacancy rate and Canitia's. Canitia used three percent, and Northern View claimed a fourteen percent rate. The BTA granted weight to Canitia's vacancy rate because Northern View did not explain why the rate was so high or whether it related to market conditions. The BTA ruled that Northern View had not met its burden of providing evidence to rebut North Olmsted's and the BOE's evidence on the true value of the property. Thus, the BTA adopted the income valuation Canitia offered, modifying it as to laundry income and reserves for replacement. It determined the true value of the property to be $2,792,450.

{¶ 8} The cause is now before this court upon Northern View's appeal as of right.

_____

*Kolick & Kondzer, Thomas A. Kondzer* and *Rita M. Jarrett*, for appellee North Olmsted Board of Education.

*Fred Siegel Co., L.P.A.,* and *Annrita S. Johnson,* for appellant.

_____

*Per Curiam.*

{¶ 9} Northern View, in its first proposition of law, claims that Canitia is not an independent fee appraiser because he (1) represents, almost exclusively, school boards in Cuyahoga County, (2) has not obtained a real estate appraisal certificate from Ohio under R.C. Chapter 4763, (3) improperly collected and verified data for his report, and (4) improperly treated information in preparing his report. We reject these claims.

**{¶ 10}** As to whether Canitia must obtain a certificate as a real estate appraiser before he can testify about his opinion of value, R.C. 4763.13(F) states:

"Nothing in this chapter shall preclude a person who is not licensed or certified under this chapter from appraising real estate for compensation."

**{¶ 11}** Thus, an individual may testify before the BTA about the appraisal of real estate without being certified under R.C. Chapter 4763 if he is otherwise qualified, as determined by the BTA. The remainder of Northern View's claims under this proposition aim at Canitia's credibility and the weight to be given his testimony and report. The BTA had a firsthand opportunity to observe Canitia's testimony; it may grant credibility and weight to his testimony and his report. *Witt Co. v. Hamilton Cty. Bd. of Revision* (1991), 61 Ohio St.3d 155, 573 N.E. 2d 661. Here, the BTA accepted major sections of his report and adjusted other sections. It received no competing testimony from Northern View. We do not find that it abused its discretion in granting weight and credibility to Canitia's testimony and report. *Id.*

**{¶ 12}** In its second proposition of law, Northern View argues that the BTA's selection of market rents, vacancy rate, and capitalization rate is not supported by sufficient, probative evidence. We disagree.

**{¶ 13}** According to the testimony, Canitia based his rentals on the asking rents in 1994 and trended them to the year of valuation, 1991. He testified that he "went to market and adjusted the rentals in accordance with what I considered to be market rents." He did not provide a survey of market rents.

**{¶ 14}** This evidence is probative enough to support the BTA's adoption of Canitia's rental income. *S. Euclid/Lyndhurst Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision (*1996), 74 Ohio St. 3d 314, 658 N.E. 2d 750. The BTA accepted Canitia as an expert appraisal witness and may believe his testimony on these adjustments. While the BTA could have selected the actual income presented in the income

statements, Northern View did not present anyone to testify about these amounts, nor did it present an appraiser to testify about market rents.

{¶ 15} As to the vacancy rate, Canitia testified that each time he asked the property managers about vacancies, no apartments were immediately available. He, accordingly, applied a low rate. This evidence supports the BTA's vacancy-rate finding. The BTA rejected Northern View's vacancy study, supporting a higher rate, because no one explained why it was so high.

{¶ 16} Next, as to the capitalization rate, Northern View contends that the BTA should have rejected Canitia's nine-percent capitalization rate because it was from an annual survey which was not current. Instead, Northern View asserts that the BTA should have selected a rate for a time period closer to the valuation date. It asserts that the BTA should have employed a first quarter 1991 rate according to a study contained in the record, which indicated an average capitalization rate of 9.9 percent for northeastern Ohio. However, no one testified positively for the use of this rate. Northern View fails because it failed to present evidence rebutting Canitia's testimony.

{¶ 17} Finally, in its third proposition of law, Northern View contends that the true value found by the BTA is in excess of the evidence presented, claiming that the BTA ignored *Ridgeview Ctr., Inc. v. Lorain Cty. Bd. of Revision* (1989), 42 Ohio St.3d 30, 536 N.E. 2d 1157. Again, we disagree.

{¶ 18} In *Ridgeview Ctr.,* the BTA's finding was much higher than the opinion of any of the witnesses, and nothing in the administrative record supported the BTA's decision. Furthermore, the BTA did not state what evidence in the record prompted its decision.

{¶ 19} In this case, the BTA applied numbers testified about by Canitia and other numbers contained in the record, including the administrative record. In fact, its true-value decision is a little less than the value indicated under Canitia's income

approach. Most important, the BTA explained how it reached its value. We find no error under this proposition of law.

{¶ 20} Accordingly, we affirm the BTA's decision because it is reasonable and lawful.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and COOK, JJ., concur.

PFEIFER, J., dissents.

WRIGHT, J., not participating.

_____

**Pfeifer, J., dissenting.**

{¶ 21} Among the factors in this case upon which the parties disagree, the one that makes the biggest difference in the valuation of Northern View Apartments is the vacancy rate. The Board of Tax Appeals should have accorded more weight (some would have been more) to the actual vacancy rate instead of relying on the appraiser's opinion of what the vacancy rate should be or would be if the building were managed better or in another location. To me, the best evidence of an apartment building's vacancy rate is its vacancy rate. We do not live in a world of theoretical vacancy rates; rather we live in a world where apartments are either rented or vacant. When they are vacant, the Board of Tax Appeals did not use the best available evidence of Northern View Apartments' vacancy rate.

_____