EASTBROOK FARMS, INC., Appellant,

v.

WARREN COUNTY BOARD OF REVISION et al., Appellees.

[Cite as *Eastbrook Farms, Inc. v. Warren Cty. Bd. of Revision*, 194 Ohio App.3d 193, 2011-Ohio-2103.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA2010–09–084.

Decided May 2, 2011.

Coolidge Wall Co., L.P.A., Jonas J. Gruenberg, David P. Pierce, and Sasha Alexa M. Van DeGrift, for appellant.

David P. Fornshell, Warren County Prosecuting Attorney, and Christopher A. Watkins, Assistant Prosecuting Attorney, for appellees, Warren County Board of Revision and Warren County Auditor.

---

RINGLAND, Judge.

{¶ 1} Plaintiff-appellant, Eastbrook Farms, Inc., appeals the judgment of the Warren County Court of Common Pleas affirming a decision of the Warren County Board of Revision ("BOR") regarding a real property valuation increase for the 2006 tax year. For the reasons that follow, we affirm the judgment of the common pleas court.

{¶ 2} Eastbrook owns approximately 83.115 acres of undeveloped property on State Route 73 in the city of Springboro. For the 2005 tax year, the Warren County Auditor valued the property at $2,202,550. In 2006, the auditor increased the taxable value of the property to $3,740,180.

{¶ 3} In March 2007, Eastbrook filed a complaint with the BOR regarding the auditor's 2006 value determination. In support of its complaint, Eastbrook submitted an appraisal performed by Jerry Fletcher, a certified real estate appraiser. In the written appraisal, Fletcher noted that there was a discrepancy in the zoning for the property. Springboro's zoning map designated the property as an office park district ("O–2"). However, in a 2004 decision, this court determined that the property was located in a planned-unit development ("PUD"). See *Eastbrook Farms, Inc. v. Springboro*, Warren App. No. CA2003–

08–080, 2004-Ohio-1377, 2004 WL 550041. He also noted that the property is large and undeveloped, with a topography that is rolling to steep and heavily wooded, and that a portion of it is located in a flood zone.

{¶ 4} Basing his appraisal on the PUD designation, Fletcher opined that the highest and best use of the property would be represented by commercial/retail and residential development of the site. Using surrounding comparables zoned residential ("R–1"), Fletcher determined the true value of the property to be $18,500 per acre, or $1,550,000. In his written report, he further stated that "given the ambiguous and restrictive nature of the [property's] [z]oning," residential development was the most logical use for the property.

{¶ 5} The BOR held a hearing on the matter, and Fletcher and the auditor's appraiser, Edward Rinck, testified concerning their value determinations. Rinck stated that he appraised the property under the O–2 designation and concluded that commercial/retail development was the highest and best use for the property. He testified that property zoned as an office-park district would be valued at a higher rate than residential development, and he used comparable sales of commercial land both adjacent to the property and elsewhere in the county, including those zoned PUD, to support his true-value determination of $45,000 per acre, or $3,740,180.

{¶ 6} In its October 2007 decision, the BOR noted that despite the O–2 designation on the zoning map, the city had treated the property as being zoned PUD, because it would allow for a broader market for the property when compared to the O–2 classification. The BOR further noted that Eastbrook had previously marketed and sold part of the property for commercial development in accordance with PUD zoning. Based upon its review of the evidence, the BOR found that the auditor's appraisal supported its original determination of value, and ordered the property to be assessed at $3,740,180.

{¶ 7} On November 16, 2007, pursuant to R.C. 5717.05, Eastbrook filed an appeal from the BOR decision to the Warren County Common Pleas Court. The case was assigned to a trial court magistrate, who permitted the record to be supplemented on appeal with the deposition testimony of Edward Rinck. Following a hearing on the matter, the magistrate determined that Eastbrook failed to establish its right to a reduction in the property's taxable value. The magistrate concluded that Fletcher's claim that residential development was the only viable use for the property, and in particular, his opinion that there was an inadequate demand for office space in Springboro and a lack of support for commercial or retail development, was based upon assumptions not supported by fact. The magistrate determined that the property's true value, as of January 1, 2006, was $3,740,180.

{¶ 8} Eastbrook filed objections to the magistrate's decision, which were overruled by the common pleas court in its September 21, 2009 entry adopting the magistrate's findings.

{¶ 9} Eastbrook appeals the lower court's decision, raising three assignments of error for our review. Eastbrook's first and second assignments present similar issues and will be addressed together.

{¶ 10} Assignment of error No. 1:

{¶ 11} "The trial court erred in adopting the magistrate's decision which deferred to the auditor's initial valuation when Eastbrook presented evidence rebutting the auditor's initial valuation."

{¶ 12} Assignment of error No. 2:

{¶ 13} "The trial court erred by overruling the objections to the magistrate's decision because the magistrate improperly relied on the auditor's unreliable initial valuation."

{¶ 14} In its first and second assignments of error, Eastbrook argues that the common pleas court erred in adopting the magistrate's taxable-value finding. Eastbrook contends that the magistrate's decision gave "improper deference" to the auditor's initial valuation despite the evidence provided by Eastbrook and that the auditor's valuation was unreliable and should not have been considered by the court.

{¶ 15} At the outset, we observe that in ruling on objections to a magistrate's decision, Civ.R. 53(D)(4)(d) requires a trial court to undertake an independent review of the objected matters to ascertain whether the magistrate properly determined the factual issues and appropriately applied the law. *Koeppen v. Swank,* Butler App. No. CA2008–09–234, 2009-Ohio-3675, 2009 WL 2232106, ¶ 26. A trial court's decision to modify, affirm, or reverse a magistrate's decision lies within its sound discretion and should not be reversed on appeal absent an abuse thereof. *Setzekorn v. Kost USA, Inc.,* Warren App. No. CA2008–02–017, 2009-Ohio-1011, 2009 WL 580796, ¶ 9. A trial court abuses its discretion only if its decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 16} Determining the true value of property on appeal from a board-of-revision decision is a question of fact for the court of common pleas after performing an independent investigation and reevaluation of the board's value determination. R.C. 5717.05; *In re Complaint Against the Valuation of Real Property of Houston,* Madison App. No. CA2004–01–003, 2004-Ohio-5091, 2004 WL 2182655, ¶ 6, citing *Black v. Cuyahoga Cty. Bd. of Revision* (1985), 16 Ohio

St.3d 11, 16 OBR 363, 475 N.E.2d 1264, paragraph one of the syllabus. Neither the board of revision's property valuation nor an auditor's appraisal is entitled to a presumption of validity. *Springfield Local Bd. of Edn. v. Summit Cty. Bd. of Revision* (1994), 68 Ohio St.3d 493, 494–495, 628 N.E.2d 1365.

{¶ 17} As fact-finder, the court must " 'independently weigh and evaluate all evidence properly before it. * * * The court's review of the evidence should be thorough and comprehensive, and should ensure that its final determination is more than a mere rubber stamping of the board of revision's determination.' " *Murray & Co. Marina, Inc. v. Erie Cty. Bd. of Revision* (1997), 123 Ohio App.3d 166, 173, 703 N.E.2d 846, quoting *Black* at 13–14. In performing its review, the court enjoys broad discretion in determining the weight of the evidence and credibility of the witnesses and is not required to adopt a valuation or appraisal methodology espoused by any expert or witness. Id. A trial court's independent judgment of a property's value will not be reversed on appeal absent a showing of an abuse of discretion. *Houston* at ¶ 7; *Berner v. Sodders,* Clark App. No. 2010 CA 40, 2010-Ohio-4914, 2010 WL 3945348, ¶ 29.

{¶ 18} In challenging a county auditor's valuation determination on appeal to the trial court, a taxpayer has the initial burden and obligation to prove the right to a reduction. R.C. 5717.01, et seq.; *Fairlawn Assoc., Ltd. v. Summit Cty. Bd. of Revision,* Summit App. No. 22238, 2005-Ohio-1951, 2005 WL 956989, ¶ 11; *Mentor Exempted Village Bd. of Edn. v. Lake Cty. Bd. of Revision* (1988), 37 Ohio St.3d 318, 319, 526 N.E.2d 64. A taxpayer " 'may successfully challenge a determination of a [b]oard of [r]evision only where the taxpayer produces competent and probative evidence to establish the correct value of the subject property.' " *Fairlawn* at ¶ 11, quoting *Amsdell v. Cuyahoga Cty. Bd. of Revision* (1994), 69 Ohio St.3d 572, 574, 635 N.E.2d 11. Generally, an auditor has no corresponding burden to defend his valuation, and a taxpayer is not entitled to a reduction simply because the auditor does not present evidence to rebut his claim. Id. at ¶ 12; *Murray* at 172. An auditor's duty to defend his valuation is only triggered once the taxpayer establishes his right to a value reduction. Id.

{¶ 19} Eastbrook claims that it met its initial burden of presenting competent, probative evidence supporting its right to a reduction. It stresses that Fletcher used the guidelines promulgated by the Uniform Standards of Professional Appraisal Practice Rules ("USPAP") in conducting the appraisal and discussed at length how the property's topography, location, and proximity to other adjacent properties affected its value. Eastbrook also points to the fact that in Fletcher's appraisal, he used comparable sales of three nearby properties,

all of which were zoned residential and were large in size and irregularly shaped, with level-to-rolling topography: (1) 54.02 acres in the city of Waynesville, which sold on November 23, 2005, for $12,494 per acre, (2) 22.684 acres in the city of Springboro, which sold on September 9, 2003, for $21,624 per acre, and (3) 47.653 acres in Springboro, which sold on October 13, 2006, for $25,182 per acre. Eastbrook asserts that this independent evidence established that the correct value of the property was $18,500 per acre, or $1,550,000.

{¶ 20} Eastbrook also claims that the auditor's initial valuation should not have been considered by the common pleas court. Specifically, it argues that Rinck's appraisal was unreliable because he was not a licensed appraiser and testified in his deposition to having no formal education in appraising real estate. Eastbrook also claims that Rinck's methodology was unreliable because he allegedly failed to take into account the property's topography in his valuation and improperly relied on commercial properties for his appraisal comparisons.

{¶ 21} Upon review, we find no abuse of discretion in the common pleas court's adoption of the magistrate's conclusion that Eastbrook failed to satisfy its burden of proving its entitlement to a taxable-value reduction. Contrary to Eastbrook's claim, it does not appear that the court improperly deferred to the BOR's determination in this case. Our review of the court's decision reveals that it carefully considered the evidence presented by the parties, including the supplemented evidence. The court simply found that Eastbrook's appraisal was not adequately supported by what it considered to be competent, probative evidence. Of particular significance to the court was Fletcher's reliance on residential comparisons and his assertion in his appraisal that "there is inadequate demand for office-use in Springboro. The [c]ity of Springboro's at times ambiguous and restrictive [z]oning concerning the [property] clearly expresses that the [c]ity of Springboro does not want commercial/retail development or residential development of the [property]."

{¶ 22} As initially noted by the magistrate, the court observed that Fletcher's claims were speculative in nature and not supported by the record, because there was no evidence as to the lack of demand for commercial office space in Springboro. The court noted that there was evidence that a portion of the property in the same PUD zone as Eastbrook's property contained commercial establishments. As a result, the court found Fletcher's assertions to run afoul of USPAP Rule 1–3, attached as an exhibit to Rinck's deposition, which provides as follows:

{¶ 23} "When necessary for credible assignment results in developing a market value opinion, an appraiser must:

{¶ 24} "(a) identify and analyze the effect on use and value of existing land use regulations, reasonably probable modifications of such land use regulations,

economic supply and demand, the physical adaptability of the real estate, and market area trends; * * *."

{¶ 25} The comment to subsection (a) provides that an appraiser must "avoid making an *unsupported assumption or premise* about market area trends, effective age, and remaining life." (Emphasis added.)

{¶ 26} In addition, although Eastbrook claims that Rinck's initial valuation was unreliable, we note that there was evidence before the court that Rinck had been performing property appraisals since 1976 and began performing mass appraisals for the county in 1992. He also testified to taking several educational courses from the International Association of Assessing Officers and had completed college courses in real estate. With regard to his methodology, Rinck noted that within the PUD designation in the area surrounding the property, there were land values that exceeded $120,000 per acre. As a result, Rinck testified that he started with a base rate of $125,000 per acre. He then applied a ten percent topography adjustment and a 60 percent size adjustment for the property before arriving at a rate of $45,000 per acre. Although Eastbrook argues that the use of commercial comparables and the auditor's base rate were in error, as this court has previously noted, estimating property values inherently involves discretion, and county auditors are instructed to estimate those values, not calculating them "to a mathematical certainty." *Houston*, 2004-Ohio-5091, 2004 WL 2182655, ¶ 23. Reasonable minds can and will differ over specific value judgments. Id.

{¶ 27} Based on the foregoing, we find that both the magistrate and the court acted within their discretion in finding Rinck's testimony as to the property's true value to be credible and supported by the evidence. Eastbrook's first and second assignments of error are therefore overruled.

{¶ 28} Assignment of error No. 3:

{¶ 29} "The trial court erred by overruling the objections to the magistrate's decision and failing to hold an evidentiary hearing on the property's permitted uses."

{¶ 30} In its third assignment of error, Eastbrook claims that the lower court abused its discretion in overruling Eastbrook's objection to the magistrate's failure to hold an evidentiary hearing on the property's permitted uses. After noting that Springboro's tax map indicated that the property was zoned O–2 and that this court had determined that the property was zoned PUD, the magistrate opined, "For reasons which are not entirely clear to this Magistrate, neither Rinck nor Fletcher seem to know precisely what the PUD allows in terms of permitted uses." Eastbrook postulates that this statement demonstrates that additional information regarding the property's permitted uses would have been relevant to the magistrate's determination of the highest and best use of the

property. Because the parties had not briefed the issue to the magistrate, Eastbrook claimed that the magistrate did not have sufficient evidence before it to render a decision and that both it and the common pleas court should have held a hearing on the permitted-use issue.

{¶ 31} R.C. 5717.05 provides that in performing its independent review of a board of revision decision, a trial court "may hear the appeal on the record and the evidence thus submitted, or it may hear and consider additional evidence." Although R.C. 5717.05, in effect, contemplates a decision de novo on the part of the trial court, it does not require an original action or trial de novo. *Black*, 16 Ohio St.3d 11, 16 OBR 363, 475 N.E.2d 1264, at paragraph one of the syllabus.

{¶ 32} Upon review, we find the magistrate's statement regarding the permitted uses of PUD zoning to merely constitute a comment on the evidence presented. Contrary to Eastbrook's claim, it was not a determination on the part of the magistrate that the record lacked sufficient evidence to determine the permitted uses for the property.

{¶ 33} With regard to the sufficiency of the evidence, the record indicates that in exercising its discretion under R.C. 5717.05, the magistrate afforded the parties an opportunity to present additional evidence regarding their positions. Indeed, the record was supplemented with the deposition transcript of Edward Rinck. The magistrate also held a hearing on the matter prior to rendering its decision. In light of the evidence presented for the court's consideration, we conclude that neither the magistrate nor the common pleas court was required to hold an evidentiary hearing on the property's permitted uses. Eastbrook's third assignment of error is accordingly overruled.

Judgment affirmed.

POWELL, P.J., and PIPER, J., concur.