**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Steak 'n Shake, Inc. v. Warren Cty. Bd. of Revision,* **Slip Opinion No. 2015-Ohio-4836.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-4836

STEAK 'N SHAKE, INC., N.K.A. STEAK 'N SHAKE OPERATIONS, INC., APPELLANT,

*v.* WARREN COUNTY BOARD OF REVISION ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Steak 'n Shake, Inc. v. Warren Cty. Bd. of Revision,* Slip Opinion No. 2015-Ohio-4836.]**

*Taxation—Real property valuation—Sale prices of leased properties generally must be adjusted when determining the value of comparable unleased properties.*

(No. 2014-0744—Submitted July 7, 2015—Decided November 25, 2015.)

APPEAL from the Board of Tax Appeals, No. 2010-3527.

_____

**Per Curiam.**

{¶ 1} This real-property-valuation case concerns the proper valuation for tax year 2009 of a Steak 'n Shake restaurant located in Warren County. Appellant, Steak 'n Shake, Inc., n.k.a. Steak 'n Shake Operations, Inc., filed a complaint seeking a reduction of the value assigned to its property; appellee

Warren County Board of Revision ("BOR") retained appellee auditor's original valuation for the property. At the hearing before the Board of Tax Appeals ("BTA"), the property owner presented an appraisal report and testimony from an appraiser, while the county presented an appraisal prepared by an employee of the county's valuation consultant. The BTA adopted the county's valuation, and Steak 'n Shake has appealed, challenging both the competency and the probative force of the county's valuation of the property.

{¶ 2} Under the circumstances, we must reject Steak 'n Shake's competency arguments. We do, however, agree with Steak 'n Shake that the BTA erred in its uncritical acceptance of the county appraiser's reliance on encumbered comparable properties in determining the value of the subject property, which is occupied by its owner. We therefore reverse the decision of the BTA, and we remand for a determination of value based on the property owner's appraisal and/or any other evidence in the record.

## FACTUAL BACKGROUND

{¶ 3} At issue is a 1.5-acre parcel improved with a 3,496-square-foot restaurant, a Steak 'n Shake, visible from I-71 on the northern outskirts of Cincinnati. It was built in 1995 and is occupied by the owner-operator. An additional improvement is the parking lot with space for 66 cars.

### The BOR proceedings

{¶ 4} On March 17, 2010, Steak 'n Shake filed a complaint seeking a reduction for tax year 2009 from the auditor's valuation of $1,259,590 to $832,000. The Mason City School District Board of Education ("school board") filed a countercomplaint on April 8, seeking retention of the auditor's valuation.

{¶ 5} On October 19, 2010, the BOR held a hearing at which Steak 'n Shake presented an owner's opinion of value. The owner's opinion consisted of an income approach arriving at a valuation of $778,000 and a sales-comparison approach concluding a value of $822,000; the owner suggested a reconciliation

value of $800,000. Counsel explained the opinion at the BOR hearing without testimony from the owner.

{¶ 6} At the hearing, the auditor's consultant, Ed Rinck, offered his opinion that a different capitalization rate ought to be used under the income approach: he arrived at a value of $1,082,790, which the board adopted.

{¶ 7} Steak 'n Shake appealed to the BTA. At the BTA hearing on February 19, 2013, Steak 'n Shake and the county both presented appraisal reports along with testimony of the appraisers.

*The property owner's appraisal*

{¶ 8} Steak 'n Shake presented the appraisal report and testimony of commercial real estate appraiser W. Shaun Wilkins, a longtime state-certified appraiser and member of the Appraisal Institute with extensive experience appraising commercial properties, including some in Warren County.

{¶ 9} Wilkins determined that "[t]he restaurant building is concluded to be the highest and best use" of the property as improved. Deciding that the cost approach was not applicable because of the size and age of the property, Wilkins proceeded to evaluate four comparable sales in the Cincinnati area while confining his analysis to sales before the lien date on the theory that such information would be within the knowledge of market participants on the lien date. Wilkins adjusted the sale prices of the comparable properties and adopted the average, $180 per square foot, to determine the value for the subject property under the sales-comparison approach: $629,000.

{¶ 10} Under the income approach, Wilkins identified seven comparable properties in the Cincinnati area, all of which were leased, and examined the leases and premises; four of the leased comparable properties were Steak 'n Shakes. Rents ranged from $14.73 to $24.93 per square foot, and Wilkins located the property at issue in the upper part of the range at $22 per square foot, with a potential gross income of $76,912 for the subject property.

**{¶ 11}** Wilkins then allowed deductions for loss because of vacancy and for minor expenses on the assumption of leasing on a net basis. At the end, net income was calculated to be $66,692. Using both market-comparison and band-of-investment methods, Wilkins derived a capitalization rate of 9.11 percent. When the income, $66,692, was divided by the capitalization rate, .0911, the value of the property was calculated to be $732,075, which Wilkins rounded to $732,000.

**{¶ 12}** Finally, Wilkins reconciled the two approaches by averaging the two values to $680,500, rounded to $680,000.

*The county's appraisal*

**{¶ 13}** The Warren County auditor and the BOR presented the report and testimony of Edward Rinck, an employee of Ward & Associates, the firm hired by Warren County to perform mass-appraisal services for the auditor. Rinck had prepared a report that looked to three properties allegedly comparable for both sale and rent values. Each of the properties was a restaurant subject to lease that had sold: an Arby's in Lebanon built in 1987 that sold in October 2010 for $775,000; a Kentucky Fried Chicken in Middletown built in 1985 that sold in June 2012 for $760,000; and an Applebee's in the same township as the subject property built in 1997 that sold in September 2010 for $1,473,742.

**{¶ 14}** Rinck made some adjustments for the size and quality of the construction of the properties; no adjustments were made for the time of the sales (during recovery from a recession as opposed to the January 1, 2009 lien date for the subject property) or for the fact that they were subject to a lease, which could affect the sale price and rent. Rinck derived a value of $996,000 from the sales comparison.

**{¶ 15}** All three comparable properties were subject to long-term leases, and Rinck used the lease values for the income method. The Arby's transaction in 2010 was a sale-leaseback with rent at $27.66 per square foot; the Kentucky

Fried Chicken was sold subject to a lease that ran from January 2007 to October 2016 with rent at $19.36 per square foot; and the Applebee's was sold subject to a lease that began September 2010 with rent at $24.42 per square foot.

{¶ 16} Rinck made adjustments to the lease rates, then applied a capitalization rate of 8.75 percent, which he apparently extracted from the values used for the three comparable properties, that is, he divided the income by the sale price to obtain the capitalization rate for each property, then averaged them to 8.75 percent for the property at issue.

{¶ 17} Under the sales-comparison method, Rinck derived a value of $996,000, and under the income method, Rinck derived a value of $998,000. He also averaged the two figures as his method of reconciliation: he concluded the property value was $997,000.

*The BTA's decision*

{¶ 18} On April 15, 2014, the BTA issued its decision. The board began by noting that the two appraisals stood in conflict concerning "the proper elements to be considered in the income approach and the proximity of the transfers of the sale comparable to the tax lien date." BTA No. 2010-3527, 2014 Ohio Tax LEXIS 2425, 4-5 (Apr. 15, 2014). Evaluating those conflicts, the board stated: "[W]e find that Rinck's report more accurately reflects the nature of the subject property and its optimal location in [a] highly visible and trafficked area." *Id*. at 5. By contrast, the BTA found that Wilkins's comparable properties were less reliable, given that the earlier owners had stopped doing business at those locations, that the properties had had extended stays on the market, and that they currently "were in a second generation use." *Id*. In a footnote, the BTA brushed aside Steak 'n Shake's objections to Rinck's qualifications to testify, finding that he was "competent to provide testimony as to the valuation of the subject property." *Id*. at 4, fn. 2. Accordingly, the board adopted Rinck's valuation, $997,000, as the property value for tax year 2009. Steak 'n Shake then appealed.

**STEAK 'N SHAKE'S OBJECTIONS TO THE COMPETENCY AND LACK OF INDEPENDENCE OF RINCK'S APPRAISAL ARE REJECTED**

{¶ 19} Steak 'n Shake impugns Rinck's qualifications to have offered an opinion at the BTA. Additionally, Steak 'n Shake argues that because Rinck is an employee of the county's mass-appraisal consultant, he lacks the independence necessary to qualify to give expert testimony before the BTA.

*Admissibility issues lie within the BTA's discretion as fact-finder*

{¶ 20} "Ordinarily, testimony as to property value is not competent and admissible unless it is the professional opinion of an expert." *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 140 Ohio St.3d 248, 2014-Ohio-3620, 17 N.E.3d 537, ¶ 18. We have regarded the proper use of expert opinions as lying within the sound discretion of the BTA. We defer to the BTA's determination of the *competency* as well as to the board's determination of the *credibility* of the evidence presented to it.

{¶ 21} Thus, when confronted with the contention that a witness could not qualify as an expert because he was not a state-certified appraiser, we consulted the certification statute and concluded that "an individual may testify before the BTA about the appraisal of real estate without being certified under R.C. Chapter 4763 if he is otherwise qualified, as determined by the BTA." *N. Olmsted Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 75 Ohio St.3d 595, 597, 664 N.E.2d 1285 (1996).

{¶ 22} As for whether the appraiser must be independent of the interests of the parties, we have treated the matter as within the BTA's discretion as fact-finder. In *Witt Co. v. Hamilton Cty. Bd. of Revision*, 61 Ohio St.3d 155, 158, 573 N.E.2d 661 (1991), an employee of the property owner's consultant, which was entitled to a fee only if a reduction was ordered, presented an appraisal that the BTA rejected on the grounds that it was not independent. On appeal, this court affirmed the BTA's disposition not based on an analysis of the independence of

the appraisal evidence but instead on the ground that the decision to exclude the appraisal fell within the BTA's general discretion to determine a witness's credibility.  Similarly, in *Loveland Pines v. Hamilton Cty. Bd. of Revision*, 66 Ohio St.3d 387, 388, 613 N.E.2d 191 (1993), we affirmed the BTA's reliance on an appraisal by an employee of the county auditor's office, which the property owner objected to because of the employee's "lack of education and outside experience."  We stated, " 'All these facts bear on the witness' credibility, which is within the sound discretion of the BTA.' "  *Id.*, quoting *Witt Co.* at 158.

*No objection was lodged to the admissibility of Rinck's opinion, and the BTA's consideration of it did not constitute plain error*

{¶ 23} We have also held that when an objection to evidence could have been made before the tax tribunals but was not, a plain-error standard applies on appeal.  *See Plain Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 130 Ohio St.3d 230, 2011-Ohio-3362, 957 N.E.2d 268, ¶ 20-21; *Sapina v. Cuyahoga Cty. Bd. of Revision*, 136 Ohio St.3d 188, 2013-Ohio-3028, 992 N.E.2d 1117, ¶ 17.  We conclude that there is no basis for a finding of plain error as to any of the waived objections here.

{¶ 24} Rinck is an experienced appraiser who had been in the profession for 36 years at the time of hearing and who was employed by the consultant used by Warren County.  His testimony has been accepted in other contexts, as the county argued.  Specifically, he has testified several times before the BTA, and one court of appeals has noted that he had been providing appraisals for years; that same court also found that the board of revision and the common pleas court acted within their discretion in finding his testimony to be credible.  *Eastbrook Farms, Inc. v. Warren Cty. Bd. of Revision*, 194 Ohio App.3d 193, 2011-Ohio-2103, 955 N.E.2d 418, ¶ 26 (12th Dist.).

{¶ 25} Rinck's background suffices to establish that there was no plain error in the BTA's considering his report and his testimony as evidence of value.

{¶ 26} Nor is Rinck's alleged noncompliance with Uniform Standards of Professional Appraisal Practice plain error upon which we may predicate reversal. Although compliance with appraisal-industry standards may in other contexts be mandatory, nothing makes it mandatory *before the BTA*—compliance with those standards goes to the weight and probative character to be ascribed to the appraisal.

### RINCK'S SUPPLEMENTAL TESTIMONY CONCERNING HIGHEST-AND-BEST-USE WAS ADMISSIBLE

{¶ 27} Counsel for Steak 'n Shake did object to Rinck testifying as to the highest-and-best-use and location analyses, neither of which was discussed in Rinck's appraisal report. Steak 'n Shake argues in its brief that the testimony violated discovery rules as well as the BTA's own rules regarding disclosure of expert reports: because the report was skimpy and fleshed out only at the hearing, counsel did not properly have the opportunity to prepare. But the BTA's rules, the Civil Rules, and the case law did not establish a legal right to have the testimony excluded.

{¶ 28} At the time the BTA conducted its hearing in this matter, the BTA's rules required generally that witnesses and exhibits be identified 14 days before the hearing. Former Ohio Adm.Code 5717-1-15(I), 2008-2009 Ohio Monthly Record 2-2562, effective Feb. 1, 2009. This requirement was made specifically applicable to expert witnesses and their written reports. Former Ohio Admin.Code 5717-1-11(A)(5), *id*. The rules also provided that discovery be conducted in accordance with the Civil Rules to the extent that they are not inconsistent with other board rules. Former Ohio Adm.Code 5717-1-11(A), *id*. at 2-2561.

{¶ 29} These cited provisions furnish no grounds for Steak 'n Shake to establish *a legal right* to have had Rinck's testimony excluded. It appears that Rinck was timely identified and that Rinck's report was timely disclosed. The

supplemental testimony at the hearing does not violate the rules, and remedying any secondary violation of their letter or spirit lay within the BTA's sound discretion. Moreover, the availability of discovery afforded Steak 'n Shake the right to depose Rinck to question him about the extent of his testimony.

{¶ 30} Steak 'n Shake fares no better under the case law cited in its brief. It cites *Shumaker v. Oliver B. Cannon & Sons, Inc*., 28 Ohio St.3d 367, 370, 504 N.E.2d 44 (1986), *abrogated on other grounds by State v. D'Ambrosio*, 67 Ohio St.3d 185, 191, 616 N.E.2d 909 (1993), for the general proposition that timely discovery of expert testimony is important to preserve the right of effective cross-examination—but nothing in the case supports the legal right, as asserted by the property owner here, to exclude certain testimony. In *Shumaker*, allowing the expert testimony was an abuse of discretion because *no notice had been given* that Shumaker claimed that he had cancer. The cancer diagnosis was not made until after he had filed an action claiming that his pulmonary and respiratory illnesses were linked to chemicals in his workplace. That situation is not present here, since Rinck's report, though less than complete under usual standards, plainly gives notice of the substantive nature of his opinion.

{¶ 31} Steak 'n Shake argues that because highest-and-best-use testimony is an essential part of appraising the market value of real property, the county had a duty to supplement discovery to notify it of Rinck's opinions. This claim fails because there is nothing particularly surprising about Rinck's highest-and-best-use testimony in light of his written report. Rinck's highest-and-best-use testimony consisted of his affirmative answer to the following question: "In your opinion, is the use as a restaurant the highest and best use of the subject property?" Given Rinck's use in the written report of sales and rent for three comparable properties that were all identified as restaurant properties, Steak 'n Shake cannot legitimately claim to be surprised. The testimony was reasonably implied by Rinck's choice of comparable properties. Because there is no ambush

present here, there is insufficient ground to exclude the testimony on the theory that a discovery violation occurred. *Compare Shumaker* at 371 (reversing judgment when undisclosed physician testimony had been admitted because "[t]here appears to be an element of 'ambush' in the present case").

{¶ 32} Although Rinck's written report may fall short of the standard for matters that ought to be addressed in such a report, we conclude that Steak 'n Shake has not demonstrated reversible error based on its objection to Rinck's highest-and-best-use testimony.

### RINCK'S RELIANCE ON UNADJUSTED SALE PRICES OF ENCUMBERED COMPARABLE PROPERTIES WAS IMPROPER, SINCE THE SPECIAL-PURPOSE DOCTRINE DOES NOT APPLY

{¶ 33} Although we reject its procedural objections, Steak 'n Shake does advance a valid objection to the Rinck appraisal *on substantive grounds*. Quite simply, Rinck's appraisal failed to adjust the sales prices of the comparable properties to remove the effect that long-term leases would have had on those prices. Since the property at issue was unencumbered by a lease, it would likely have sold for less.

{¶ 34} The county and amicus curiae, the County Auditors' Association of Ohio, rely on *Meijer Stores Ltd. Partnership v. Franklin Cty. Bd. of Revision*, 122 Ohio St.3d 447, 2009-Ohio-3479, 912 N.E.2d 560, to oppose this point. By doing so, they underscore the value-in-use issue, because *Meijer*'s analysis depended upon the fact that one of the competing appraisals recognized that the special adaptation of the property to Meijer's use affected its value. *Id*. at ¶ 24-26. No special adaptation has been established here.

*Because the encumbrance of a lease may affect market value, sale prices of leased properties generally must be adjusted when determining the value of comparable unleased properties*

**{¶ 35}** Amicus curiae points out that "this Court has repeatedly held that sales do not need to be adjusted to reflect beneficial lease terms." Amicus curiae then cites a parade of cases: *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222; *AEI Net Lease Income & Growth Fund v. Erie Cty. Bd. of Revision*, 119 Ohio St.3d 563, 2008-Ohio-5203, 895 N.E.2d 830; and most recently, *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 138 Ohio St.3d 223, 2014-Ohio-523, 5 N.E.3d 637, ¶ 19-20 ("HIN claims that the 2004 sales price represents the value of the leased fee, not the unencumbered fee simple. It argues that we must value property in its unencumbered state. We have rejected this argument numerous times").

**{¶ 36}** Amicus curiae argues that because sale prices do not need to be adjusted for the effect of long-term leases, Rinck did not need to adjust the sale prices for the encumbered properties he used as comparable properties in this case. That is, however, mistaken. *Precisely because* the encumbrances affect sale price, and *precisely because* the difference in sales price is a difference in value for tax purposes, Rinck was required to adjust the sale prices for his comparable properties to reflect the fact that the subject property was not encumbered and would therefore likely sell for less.

*Meijer is inapposite because Steak 'n Shake has not been shown to come within the special-purpose doctrine*

**{¶ 37}** The next step in the defense of the Rinck appraisal relies on *Meijer*, 122 Ohio St.3d 447, 2009-Ohio-3479, 912 N.E.2d 560. Because the use of unadjusted sales of leased properties could be appropriate in the context of the *Meijer* case, the county argues that Rinck's reliance on unadjusted sales of encumbered properties is proper here. That also is mistaken, for two reasons.

{¶ 38} First, in *Meijer* the appraisal adopted by the BTA did not place *exclusive* reliance on unadjusted encumbered sales, as Rinck did in his appraisal in this case. To the contrary, in *Meijer*, the appraisal adopted by the BTA reflected the appraiser's conviction that the "market rent applicable to the property at issue 'is considered to lie somewhere between the ranges indicated by the first and second generation comparables, with a strong bias towards those rents indicated by the first generation lease comparables.' " *Meijer*, ¶ 11, quoting the appraiser's testimony.

{¶ 39} Second and more significantly, the use of unadjusted sales prices for encumbered comparable properties was more appropriate in *Meijer* because that case involved the proper application of the "special-purpose doctrine." Namely, in *Meijer*—unlike in the present case—the BTA evaluated and rejected the owner's appraisal, which looked straightforwardly at what Meijer could realistically sell the brand-new facility for, given that it was an outsize building adapted for Meijer's type of comprehensive retail business. *See Meijer*, ¶ 7 ("[The property owner's appraiser] looked at the big-box store as adding only modest market value because the structure would not be easily adaptable to the needs of a potential buyer, *a factor that he opined would impair the property's marketability*" [emphasis added]). In other words, the property owner wanted to appraise the property as though it were a shuttered Kmart—yet Meijer had just recently built the 193,000 square-foot store and was operating it with apparent success. Under these circumstances, we held that the BTA acted reasonably and lawfully by preferring the competing appraisal, which considered the value of the property in its use by *Meijer* itself:

> [W]e acknowledged [in *Dinner Bell Meats*] that the present use of
> a property may be considered when " 'a building in good condition
> [is] being used currently and for the foreseeable future for the

unique purpose for which it was built' "; otherwise, "the owner of a distinctive, but yet highly useful, building [would be able] to escape full property tax liability."

(Brackets sic.) *Meijer*, ¶ 25, quoting *Dinner Bell Meats, Inc. v. Cuyahoga Cty. Bd. of Revision*, 12 Ohio St.3d 270, 272, 466 N.E.2d 909 (1984), quoting *Fed. Res. Bank of Minneapolis v. State*, 313 N.W.2d 619, 623 (Minn.1981).

{¶ 40} In stark contrast with *Meijer*, there is no indication in the present case, let alone any finding, that the restaurant in question satisfies the threshold criterion for "special-purpose" treatment. Namely, no evidence in this case suggests that the construction of the restaurant involved an "improvement of the property" that "enhanced its utility to the business that occupied the property while not greatly increasing its marketability." *Meijer*, ¶ 27. To the contrary, buildings of such size and configuration were apparently readily saleable in the broader market for commercial properties.

{¶ 41} That means that the general rule of market-exchange valuation applies. *See State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 175 Ohio St. 410, 412, 195 N.E.2d 908 (1964) (in the last analysis, "the value or true value in money of any property is the amount for which that property would sell on the open market by a willing seller to a willing buyer," and the goal of an appraisal is "to determine the amount which such property should bring if sold on the open market").

## CONCLUSION

{¶ 42} For the foregoing reasons, we reverse the decision of the BTA, and we remand for further proceedings. On remand, the BTA should determine the property value considering the Wilkins appraisal and any other evidence in the record.

Decision reversed
and cause remanded.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Karen H. Bauernschmidt Co., L.P.A., Karen H. Bauernschmidt, and Stephen M. Nowak, for appellant.

David P. Fornshell, Warren County Prosecuting Attorney, and Christopher A. Watkins, Kathryn M. Horvath, and Michael Greer, Assistant Prosecuting Attorneys, for appellees Warren County Board of Revision and Warren County Auditor.

David C. DiMuzio, Inc., and David C. DiMuzio, for appellee Mason City School District Board of Education.

Rich & Gillis Law Group, L.L.C., and Kelley A. Gorry, urging affirmance for amicus curiae, County Auditors' Association of Ohio.

_____