**[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 299.]**

HOTEL STATLER ET AL., APPELLANTS, *v.* CUYAHOGA COUNTY BOARD OF
REVISION ET AL., APPELLEES.

[Cite as *Hotel Statler v. Cuyahoga Cty. Bd. of Revision*, 1997-Ohio-388.]

*Taxation—Real property valuation by Board of Tax Apeals for tax year 1991 for*
*former hotel converted to office usage and attached parking garage is*
*reasonable and lawful, when.*

(No. 96-1738—Submitted February 25, 1997—Decided July 30, 1997.)

APPEAL from the Board of Tax Appeals, No. 94-S-264.

_____

{¶ 1} A complaint on the valuation of real property for tax year 1991 was filed by appellants on March 30, 1992, concerning three parcels of real property located in Cleveland, Ohio. The property, which is located at the northwest corner of Euclid Avenue and 12th Street, contains two structures: the 1912-1916-vintage Statler Building, a former hotel that was converted to office usage in the early 1980s, and an attached parking garage that was constructed in 1964-1965. The entire site covers an area of 61,834 square feet.

{¶ 2} The Statler Building contains a basement, mezzanine, thirteen floors and a penthouse. In total, the building contains an area of 551,486 gross square feet and a net rentable area of 392,380 square feet. The parking garage provides spaces for 350 cars.

{¶ 3} The Cuyahoga County Auditor valued the real property at $13,790,730. The appellants' complaint alleged a value of $10,000,000. A countercomplaint filed by the Cleveland Board of Education sought affirmance of the auditor's valuation. After a hearing, the Cuyahoga County Board of Revision affirmed the auditor. Appellants filed their notice of appeal with the Board of Tax Appeals ("BTA").

**{¶ 4}** At the BTA hearing appellants' only witness was Robert J. Kocinski, a Member of the Appraisal Institute. Kocinski described the 1970s and 1980s as a very good time to be in the business of leasing office space in Cleveland. However, the office market peaked in 1989 and has declined since then. According to Kocinski, especially hard hit was the class C office space of the type contained in the Statler Building, which is located in what he described as a secondary office location.

**{¶ 5}** Retail and restaurant space is located on the first floor of the Statler Building, with the mezzanine area containing ballrooms and meeting rooms. The conversion from hotel rooms to office space started on the second floor. However, some floors have been used as offices with little or no renovation.

**{¶ 6}** Kocinski's first approach to value was the cost approach. From a review of sales of comparable properties Kocinski concluded that the land alone should be valued at $75 per square foot. Based on his valuation Kocinski determined that the land alone should be valued at $4,640,000. Because of the age of the building, Kocinski went no further with his cost approach to value.

**{¶ 7}** Kocinski next presented his sales-comparison approach to value, from which he derived a valuation for the office building of $10,000,000 for 1991, $6,000,000 for 1992, and $4,000,000 for 1993. To these amounts Kocinski added the auditor's valuation of $1,890,000 for the garage, for a total value of the real property of $11,890,000 for 1991, $7,890,000 for 1992, and $5,890,000 for 1993.

**{¶ 8}** For his income approach Kocinski first calculated the gross income, which included a thirty percent reduction factor for the rental income from the office and storage areas. The thirty percent reduction factor was a combination of a twenty-five percent hard-core vacancy rate and an additional five percent reduction to account for rent loss and concessions. Kocinski determined a stabilized yearly gross income of $3,397,300. For expenses, Kocinski took an average of the actual expenses for the four-year period 1990-1993, except in cases

where he felt the average was distorted. Expenses such as real estate taxes and depreciation that he didn't deem appropriate were eliminated. In addition to the actual expenses he also added expenses of ten cents per square foot for a replacement reserve and amounts for leasing commissions and customized renovations for tenants. Expenses were projected at $2,400,900 annually. After the expenses were deducted from the gross income, the resulting annual net income was $1,392,400. Because he characterized this as a problem property, Kocinski used a capitalization rate of 11 percent plus a tax additur of 2.02 percent, for an overall capitalization rate of 13.02 percent. By dividing the net income by the capitalization rate, Kocinski determined a value of $10,690,619 for the Statler Building, to which he added the auditor's value for the garage ($1,890,700), to arrive at a total value for the real property of $12,581,319.

{¶ 9} Having determined his value for the real property using the income capitalization approach, Kocinski then made deductions from the value for the cost of additional renovations, leasing commissions, and rent loss. Kocinski also deducted one million dollars from the value determined by the income approach for the cost of asbestos removal. After these adjustments were made, Kocinski determined a value for the real property of $10,380,000 for 1991, $6,770,000 for 1992, and $5,570,000 for 1993.

{¶ 10} Reconciling his different approaches to value, and giving the most weight to the income approach, Kocinski determined a true value for the real property of $11,000,000 for 1991, $7,000,000 for 1992, and $5,600,000 for 1993.

{¶ 11} The BTA rejected portions of Kocinski's appraisal and determined a true value of $12,235,000 for tax year 1991. The BTA declined to determine different values for 1992 and 1993 as requested by appellants. Appellants filed a notice of appeal with this court.

{¶ 12} This cause is now before this court upon an appeal as of right.

———————————

*Fred Siegel Co., L.P.A.*, *Fred Siegel* and *Annrita S. Johnson*, for appellants.

*Armstrong, Mitchell & Damiani, Timothy J. Armstrong* and *Deborah J. Papushak*, for appellee Cleveland Board of Education.

———————————

***Per Curiam.***

{¶ 13} Appellants' first claim is that the BTA erred in rejecting the adjustments Kocinski made to the value he determined using the income capitalization approach. For reasons which will be discussed later, we will be considering only tax year 1991.

{¶ 14} Ohio Adm.Code 5705-3-03(D)(2) describes the income approach to value as follows: "The value is estimated by capitalizing the net income after expenses, including normal vacancies and credit losses." For a definition of "income approach," The Dictionary of Real Estate Appraisal (American Institute of Real Estate Appraisers 1984) 159, refers to the "income capitalization approach," which is defined as "[a] set of procedures in which an appraiser derives a value indication for income-producing property by converting anticipated benefits into property value. This conversion is accomplished either by 1) capitalizing a single year's income expectancy or an annual average of several years' income expectancies at a market-derived capitalization rate or a capitalization rate that reflects a specified income pattern, return on investment, and change in the value of the investment; or 2) discounting the annual cash flows for the holding period and the reversion at a specified yield rate."

{¶ 15} The vacancy rate for the property had been running in the twenty-to-twenty-five percent range for the period 1989 through 1991. The vacancy rate at the end of January 1991 was 25.33 percent. Although the vacancy rate subsequently increased, Kocinski stated that as of January 1, 1991, "the typical buyer in the market as of that time didn't realize how bad or how long the thing [depressed office market] was going to go." He explained that he was trying to see

"what the market was seeing as of that in [*sic*] point [in] time." When he determined the annual gross expenses, Kocinski included annual expenses of $81,000 for leasing commissions and $179,000 for tenant buildout. Using the method of direct capitalization of net income, Kocinski determined that the value of the Statler Building was $10,690,619; to this value he added the auditor's value for the parking garage to arrive at a total value for the real property of $12,581,319.

**{¶ 16}** Having determined the value of the property for tax year 1991 by the income approach, Kocinski then deducted $647,427 to account for additional rent loss, $64,743 for additional leasing commissions, and $490,475 for additional renovations. Kocinski's rationale for making these deductions was to account "for the cost of bringing the building back to a stabilized position."

**{¶ 17}** The BTA rejected the additional adjustments to value determined by the income approach, stating that there was "no theoretical support in either the testimony presented to this Board or in the brief submitted on appellant's [*sic*] behalf, that would justify these additional deductions."

**{¶ 18}** Appellants have referred to two quotations from The Appraisal of Real Estate (American Appraisal Institute, 10 Ed.1992) in an attempt to provide a theoretical basis for the adjustments to the income value made by Kocinski. A review of these quotations provides no support for the adjustments. The first quote cited by appellants is from a discussion of the cost approach to value and has nothing to do with the income capitalization approach to value. *Id*. at 320-321. The second quote is from a discussion of the income capitalization approach to value. The essence of the second quote is that the income approach must also consider how changes affect the value of income-producing properties. The concluding portion of the cited paragraph, which was not quoted by appellants, states that the riskier the property the higher the expected rate of return, which "should be reflected in the discount or capitalization rate selected by the appraiser." *Id*. at 410. There is no suggestion in these quotations that after the income has been capitalized

and a value determined by the income approach, the value should then be adjusted to account for the cost of additional rent loss, renovation expenses, or leasing commissions. Appellants have been unable to refer to any authority which would justify the deductions taken by Kocinski.

{¶ 19} Appellants' appraiser attempted to adjust the value calculated by the income approach in the manner used to adjust values in a sales-comparison approach. If appellants' appraiser believed adjustments needed to be made in his income approach, he should have made adjustments in his determination of income, expenses, or capitalization rate. The BTA properly disregarded the adjustments made after the value had been calculated by the income approach. The BTA is not required to adopt the appraisal methodology espoused by any expert or witness. *Youngstown Sheet & Tube Co. v. Mahoning Cty. Bd. of Revision* (1981), 66 Ohio St.2d 398, 20 O.O.3d 349, 422 N.E.2d 846, paragraph one of the syllabus.

{¶ 20} Appellants' second claim is that the BTA erred in rejecting the deduction Kocinski made for asbestos removal. After determining his value using the income-capitalization approach, Kocinski deducted the estimated cost for asbestos removal set forth in an engineering report attached to his appraisal. Kocinski admitted that he had no personal knowledge of the information contained in the report, and he denied any knowledge of the people who had prepared the report. In the statement of limiting conditions and assumptions attached to his appraisal report, Kocinski states that as to information furnished by others, "no responsibility has been assumed for its accuracy."

{¶ 21} The BTA rejected the asbestos report referred to by Kocinski because there was no evidentiary foundation for it. Appellants argue, however, that because the asbestos report was included with the transcript sent to the BTA pursuant to R.C. 5717.01, Kocinski was entitled to rely on the information in the report to form an opinion of value. A review of the board of revision transcript shows that descriptive portions of the asbestos report, such as the survey

6

methodology and a description of the surveyed areas, are not included in the board of revision transcript.

{¶ 22} The appellants' argument misses the point. Merely because a document is included in a transcript sent from the board of revision to the BTA does not require the BTA to accept the contents of the document as fact. The BTA as the trier of fact is vested with wide discretion in determining the weight to be given to evidence. *Witt Co. v. Hamilton Cty. Bd. of Revision* (1991), 61 Ohio St.3d 155, 573 N.E.2d 661. The BTA's discretion to reject evidence includes the discretion to reject evidence contained in a transcript from a board of revision. Therefore, the BTA had the discretion to discount the opinion of an appraiser based on the rejected asbestos report.

{¶ 23} Kocinski made his deduction for asbestos removal as though the value under consideration had been determined by the sales comparison approach, and not the income approach. In addition, Kocinski made his deduction as though there was a one-to-one relationship between the cost of asbestos removal and the value of the real property, although no evidence of such a relationship was presented. In *Throckmorton v. Hamilton Cty. Bd. of Revision* (1996), 75 Ohio St.3d 227, 228, 661 N.E.2d 1095, 1096, we stated, "Evidence of * * * the cost of needed repairs, while a factor in arriving at true value, will not alone prove true value."

{¶ 24} The BTA has discretion in determining how to weigh evidence and, unless the BTA abuses its discretion, we will affirm its decision. *Orange City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1996), 74 Ohio St.3d 415, 659 N.E.2d 1223. The BTA did not abuse its discretion in refusing to consider the report of an out-of-court third party concerning the cost to remove asbestos. Under the facts of this case the BTA did not err in rejecting the asbestos report.

{¶ 25} Finally, appellants claim that the BTA erred in not determining different tax values for tax years 1992 and 1993, and that its failure to do so constituted an abuse of discretion. We disagree.

**{¶ 26}** At the hearing before the BTA, in addition to his opinion of value for the complaint year, 1991, appellants' appraiser stated that the value for tax year 1992 was lower than for 1991, and for 1993 it was lower than for 1992. The BTA, after stating that it had jurisdiction to determine the value of the property for tax years 1992 and 1993, refused to find different values for the subsequent years, stating that there was no competent or probative evidence. We agree with the BTA's decision declining to determine separate values for tax years 1992 and 1993 based on the lack of probative evidence.[1] The appellants argue in their brief that because Kocinski's expert testimony was unrebutted with expert testimony, "the BTA should have accepted his unchallenged opinion." The appellants further point out that the BTA accepted portions of Kocinski's testimony. Appellants misunderstand the role of the BTA. The BTA as the trier of fact "is vested with wide discretion in determining the weight to be given to evidence and the credibility of witnesses which come before the board." *Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision* (1975), 44 Ohio St.2d 13, 73 O.O.2d 83, 336 N.E.2d 433, paragraph three of the syllabus. The BTA is not required to adopt the valuation testified to by any expert, even if the testimony is unrebutted. *Id.* at paragraph two of the syllabus. The BTA may accept all, some, or none of any expert's testimony: the "weighing of evidence and granting of credibility is exactly the BTA's statutory job." *Fawn Lake Apts. v. Cuyahoga Cty. Bd. of Revision* (1996), 75 Ohio St.3d 601, 665 N.E.2d 194, 196.

**{¶ 27}** Accordingly, for all the reasons set forth above, we affirm the BTA's decision because it is reasonable and lawful.

*Decision affirmed.*

---

1. We decline to address the issue of whether the BTA has the authority to determine different valuations for succeeding years in the same triennium in this case, where no competent, probative evidence supporting different valuations was offered.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

––––––––––––––––––––