[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2014-Ohio-3620.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-Ohio-3620

WORTHINGTON CITY SCHOOLS BOARD OF EDUCATION, APPELLEE, *v.*

FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES;

NORTHPOINTE DISTRIBUTION CENTER, L.L.C., APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2014-Ohio-3620.]

*Taxation—Real-property valuation—Owner's opinion of value—Knowledgeable employee of owner may give owner-opinion-of-value testimony.*

(No. 2012-1517—Submitted April 29, 2014—Decided August 27, 2014.)

APPEAL from the Board of Tax Appeals, No. 2008-V-670.

————————————

**Per Curiam.**

{¶ 1} This real-property-valuation case concerns the proper valuation of a commercial building consisting of warehouse and office space for tax year 2005. The property owner disagreed with the auditor's valuation and presented a value using the income approach as an "owner's opinion of value" to the Franklin County Board of Revision ("BOR"), and the BOR adopted the value suggested by

that approach. The Worthington City BOE of Education ("BOE") appealed to the Board of Tax Appeals ("BTA"), which determined that (1) the income-approach valuation offered before the BOR did not qualify as an admissible owner's opinion and (2) in any event, the income-approach valuation was not probative evidence of value. The BTA ordered that the auditor's valuation be reinstated.

{¶ 2} On appeal, the property owner contends both that its income-approach valuation qualified as a valid owner's opinion and that the BTA was not justified in its wholesale rejection of the income-approach valuation, since it had been accepted and adopted by the BOR. On both points we agree. We therefore reverse the decision of the BTA.

## FACTUAL BACKGROUND

{¶ 3} At issue is a warehouse and office building encompassing 205,430 square feet on a parcel of 15.304 acres. The tax year at issue is 2005, and that year was a reappraisal year in Franklin County. The auditor set the value of the subject property at $5,650,000. Appellant, Northpointe Distribution Center, L.L.C., the property owner, filed a complaint seeking a reduction to $4,700,000, after which the BOE filed a countercomplaint seeking retention of the auditor's valuation.

## THE OWNER'S INCOME-APPROACH VALUATION

### 1. General testimony

{¶ 4} At the BOR hearing held on May 5, 2008, Northpointe presented the testimony of Jason Carroll, an employee of Mid America Management Corporation ("Midamco"). Carroll testified that "the L.L.C. is a single purpose entity created to hold the property as is common in real estate investments," and that Midamco "is the 100 percent general partner of that L.L.C." Carroll summarized his educational and employment background: Carroll worked as an architect, then obtained an MBA in real estate from Cornell University in 2002,

after which he worked in the field of real estate investment, acquisitions, and development. In the day-to-day course of his employment, Carroll was involved in doing real estate valuations, "including tax analysis as well as every conceivable other type of analysis." Carroll's MBA coursework at Cornell included property valuation.

{¶ 5} Carroll offered a general description of the property at issue and its market. Carroll testified that the building, which was constructed in the 1960s, was designed as a large distribution center for a single retailer but has since been divided into separate spaces to be rented out. Because of its design, several features of the property make it difficult to lease to multiple tenants. Specifically, the column spacing and ceiling heights make it difficult to divide up the space for multiple-tenant use, and it is difficult to arrange the space to afford each tenant access to a dock door. Additionally, building-space modifications are often necessary when a new tenant moves in. Asked whether the leases were triple net,[1] Carroll replied, "When we can get them."

*2. Specifics of the owner's income-approach valuation*

{¶ 6} Carroll testified as author or co-author of an exhibit documenting the income-approach valuation. He explained that the operating statements setting forth revenues and expenses for 2003, 2004, and 2005 were "straight off [Midamco's] system." Attached to the exhibit were rent rolls showing year-end occupancy for 2003, 2004, and 2005. Vacancy increased from 21 percent in 2003 to 26.5 percent in 2005. In later years, the property experienced no growth in rent, and new tenants tended to want short-term leases. Carroll gave testimony regarding the valuation, and the BOE's counsel did not object that his testimony lacked foundation.

---

[1] "Under a triple net lease, the tenant is responsible for paying utilities, maintenance, real estate taxes, and insurance." *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 112 Ohio St.3d 309, 2007-Ohio-6, 859 N.E.2d 540, ¶ 3, fn. 1, citing Appraisal Institute, *The Appraisal of Real Estate* 477 (12th Ed.2001).

**{¶ 7}** Carroll also testified that the income figure in the valuation was derived from the attached statements documenting the actual income and expenses of the property. The income information did include net-lease reimbursements from tenants (in other words, at least some of the leases were net leases). Real estate taxes were deducted from operating expenses for valuation purposes, but no capital-improvement costs were removed. Expenses also included a $0.25 per square foot reserve for replacements, which Carroll testified was a "conservative number."

**{¶ 8}** Carroll also explained that the capitalization rate had been computed using the band-of-investment method. To the rate computed by that method, he applied a real estate tax additur.[2]

**{¶ 9}** Next, Carroll explained, the capitalization rate (11.6026 percent) was applied to the average of the net incomes before interest, depreciation, and real estate taxes for 2003, 2004, and 2005, which was $517,779. The method calls for dividing the net income number by the capitalization rate to arrive at the property value: $4,460,000.

### COURSE OF PROCEEDINGS

**{¶ 10}** In its deliberation, the BOR found the valuation evidence "competent, credible, and probative" and adopted $4,460,000 as the property value in place of the auditor's valuation. The BOE appealed to the BTA.

**{¶ 11}** At the BTA, the parties waived a hearing and presented their arguments through briefs, relying on the record developed before the BOR. The BOE—which had not objected below—argued that "the evidence [i.e., the

---

[2] The tax additur is added to the capitalization rate, effectively discounting the value to take into account the effective tax rate imposed on the real estate. Carroll deducted the actual tax payments from expenses and then used the additur to account for the effect of real estate taxes on property value. Likewise, Carroll deducted actual mortgage payments from expenses but accounted for debt service through the band-of-investment method of developing the discount portion of the capitalization rate. *See* International Association of Assessing Officers, *Property Assessment Valuation* 219, 234-236 (2d Ed.1996).

income-approach valuation presented at the BOR] consists of an analysis that was prepared and presented by counsel," that "[t]he property owner did not appear, nor did an officer, member or shareholder of the owner appear," and that "[t]he only witness consisted of an employee of the company that owns the property." Thus, the BOE argued, the evidence was not actually an owner's opinion of value. In the alternative, the BOE argued that "[e]ven if the analysis submitted by Northpointe's counsel had been prepared by Northpointe, the analysis falls short of providing reliable probative evidence of the subject property's value because it was totally devoid of any supporting market data."

{¶ 12} On August 7, 2012, the BTA issued its decision. First, the BTA declined to accept Carroll's testimony in conjunction with the written valuation as part of the "owner's opinion of value." BTA No. 2008-V-670, 2012 WL 3555503, *3 (Aug. 7, 2012). Instead, the BTA regarded Carroll solely as a "fact witness" who gave testimony "in support of the 'owner's opinion.' " *Id*. Along the same lines, the BTA agreed with the BOE's assertion that the written owner's opinion of value had been prepared by counsel, not Carroll—thereby preventing Carroll's testimony from constituting part of an owner's opinion of value. *Id*. Additionally, the BTA thought Carroll did not qualify to give an owner's opinion of value because he was not a shareholder or officer of Northpointe, the entity that held title to the property, and instead was an employee of Midamco, which owned Northpointe. *Id.*

{¶ 13} The BTA also addressed the merits of the owner's income-approach valuation. Noting that "the owner's opinion of value contains no market data for income or expenses whatsoever," relying as it does on "actual income and expenses of the subject to determine its value," the BTA held that the owner's opinion did "not provide competent, probative evidence of value." *Id*. The BTA therefore reinstated the auditor's determination of value.

**{¶ 14}** One member of the BTA dissented. The dissent compared the situation in the present case to that in *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 115 Ohio St.3d 449, 2007-Ohio-5237, 875 N.E.2d 913, which, relying on *Dayton-Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, held that the taxpayer's income-approach valuation sufficed to prevent reverting to the auditor's valuation. In this case as in *Bedford Bd. of Edn.*, the dissenter argued, "[o]nce evidence existed that the auditor's values were not correct, * * * reverting to those values without evidence supporting the change was unlawful." BTA No. 2008-V-670, 2012 WL 3555503, *4 (Johrendt, dissenting).

## NORTHPOINTE'S PROPOSITIONS OF LAW

**{¶ 15}** On appeal to this court, Northpointe sets forth three propositions of law as follows:

> [1] The BTA erred in simply reverting back to the auditor's original assessment and by not making its own independent determination of value.
>
> [2] The BTA erred by not finding that competent, credible and probative evidence was submitted to the BOR.
>
> [3] It is incumbent upon an appellant challenging the decision of a board of revision to come forward and offer evidence which demonstrates its right to the value sought.

## STANDARD OF REVIEW

**{¶ 16}** In reviewing the BTA's decision in light of the propositions of law asserted by Northpointe, we are mindful that we do not sit "as a super BTA or a trier of fact de novo." *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 17, citing *Youngstown*

*Sheet & Tube Co. v. Mahoning Cty. Bd. of Revision*, 66 Ohio St.2d 398, 400, 422 N.E.2d 846 (1981). To the contrary, " '[t]he fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful.' " *Id.*, quoting *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52, 239 N.E.2d 25 (1968), syllabus.

{¶ 17} This appeal confronts us, however, not with a request to second-guess the manner in which the BTA evaluated the evidence but with discrete claims of legal error regarding the *competence* of certain evidence and the legal propriety of reverting to the auditor's valuation, assuming that competent evidence had been presented to the BOR. Our review of these questions of law is de novo. *See Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054, ¶ 10.

### A QUALIFIED EMPLOYEE OF THE OWNER OF REAL ESTATE
### MAY GIVE OWNER-OPINION TESTIMONY

{¶ 18} Ordinarily, testimony as to property value is not competent and admissible unless it is the professional opinion of an expert. *See Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 605 N.E.2d 936 (1992), paragraph one of the syllabus ("It is a general rule of evidence that before one may testify as to his opinion on the value of property, one must qualify as an expert"). But equally well recognized is the exception allowing an owner "to testify concerning the value of his property without being qualified as an expert, because he is presumed to be familiar with it from having purchased or dealt with it." *Id.*, paragraph two of the syllabus.

{¶ 19} Indeed, "Ohio law has long recognized that an owner of either real or personal property is, by virtue of such ownership, competent to testify as to the

market value of the property." *Smith v. Padgett*, 32 Ohio St.3d 344, 347, 513 N.E.2d 737 (1987). Grounds for this "owner-opinion rule" lie in the assumption that the owner " 'possess[es] sufficient acquaintanceship with [the property] to estimate the value of the property, and [the owner's] estimate is therefore received *although his knowledge on the subject is not such as would qualify him to testify if he were not the owner.*' " (Emphasis added in *Smith*.) *Id.*, quoting 22 Corpus Juris, Evidence, Section 685, at 586-587 (1920). The court has recognized the validity of the owner-opinion rule in the context of valuing realty for tax purposes. *Amsdell v. Cuyahoga Cty. Bd. of Revision*, 69 Ohio St.3d 572, 574, 635 N.E.2d 11 (1994); *WJJK Investments, Inc. v. Licking Cty. Bd. of Revision*, 76 Ohio St.3d 29, 32, 665 N.E.2d 1111 (1996); *Valigore v. Cuyahoga Cty. Bd. of Revision*, 105 Ohio St.3d 302, 2005-Ohio-1733, 825 N.E.2d 604, ¶ 5. Important in the owner-opinion rule, however, is that the owner qualifies primarily as a fact witness giving information about his or her own property; usually the owner may not testify about comparable properties, because that testimony would be hearsay. *See Raymond v. Raymond*, 10th Dist. Franklin No. 11AP-363, 2011-Ohio-6173, ¶ 19-20.

{¶ 20} At the BTA, Northpointe argued that Carroll's testimony should be admitted under the owner-opinion rule; it did not argue that Carroll had been qualified as an expert appraiser. Nor does Northpointe argue to this court that Carroll was duly qualified as an expert appraiser. Accordingly, the competence and admissibility of his testimony as an opinion of value rests upon its status as constituting an owner's opinion of value.

*1. The record contains no support for the finding that*

*Northpointe's counsel prepared the written valuation*

{¶ 21} The BTA agreed with the BOE's contention that the written owner's opinion of value had been prepared by counsel, not Carroll. The question

who authored the written income-approach valuation is a quintessential fact issue, and factual determinations by the BTA ordinarily merit court deference.

{¶ 22} However, the case law does recognize the court's duty to reverse a BTA finding when "[the record] is devoid of any evidence from which the determination could be made." *Stds. Testing Laboratories, Inc. v. Zaino*, 100 Ohio St.3d 240, 2003-Ohio-5804, 797 N.E.2d 1278, ¶ 31, citing *Citizens Fin. Corp. v. Porterfield*, 25 Ohio St.2d 53, 266 N.E.2d 828 (1971), paragraph two of the syllabus ("Where a material portion of a Board of Tax Appeals decision is not supported by any probative evidence of record, the decision is unreasonable and unlawful"). Our review of the record leads us to conclude that the rule of *Stds. Testing* applies in this case: the record contains no support for the finding, with the result that the finding should be reversed.

{¶ 23} Notably, the BTA decision itself cites nothing in the record to support the finding. A review of the record, including the hearing testimony, discloses one circumstance that connects counsel to the valuation: the written income-approach valuation was submitted to the BOR with a cover letter from counsel. But the cover letter presents the written valuation as "the owner's description and opinion of value." Nowhere does the letter state or imply that counsel authored the valuation.

{¶ 24} Moreover, Carroll testified authoritatively regarding the written valuation at the BOR hearing and certainly implied that he was its author. Although a more fully adequate foundation could have been laid that Carroll authored the valuation,[3] nothing in the record—certainly not the cover letter— raised the inference that *counsel* authored the valuation. Accordingly, we reverse the finding that counsel authored the valuation.

---

[3] The BOE's counsel at the BOR hearing could have objected to the lack of foundation, and that objection would have allowed the foundation to be more securely laid—but no objection was made.

*2. Carroll's testimony and written report were competent*

**{¶ 25}** The BTA's rejection of the owner's opinion of value as competent evidence confronts us with two further issues on competence of the evidence: (1) Can Carroll qualify as giving "owner" testimony when he was employed by the *member* of the limited-liability company that held title to the property, rather than by the property-owning company itself? (2) May Carroll give "owner" testimony when he is neither an officer nor a shareholder of either entity?

a. A knowledgeable employee may give owner-opinion testimony

**{¶ 26}** The BTA cites a single case in support of rejecting Carroll's testimony as owner-opinion testimony in this case: *Tokles*, 65 Ohio St.3d 621, 605 N.E.2d 936. But *Tokles* does not dictate that Carroll had to be an officer or shareholder or that he had to be employed by the entity holding title to the property instead of its controlling member in order to offer owner-opinion testimony.

**{¶ 27}** In *Tokles*, a corporate owner of personal property that was reported stolen sued an insurance company for breach of insurance contract and bad-faith denial of coverage with respect to the theft. The corporate entity was a small, closely held, husband-wife (until divorce) corporation, and the issue was whether an officer/shareholder's testimony was competent as evidence of the value of the personal property. The corporation sought the benefit of the owner-opinion rule, but the difficulty lay in the interposition of the corporate entity as actual direct owner of the property. The court emphasized that the crucial factor was the witness's knowledge of the property at issue:

> If an officer or shareholder of a closely held corporation is permitted to testify as to value without being qualified as an expert, it should not be solely because of his title or ownership of stock, but in the main *because he, aided by his experience, has some*

10

*particular means of forming an intelligent and correct judgment as to the value of the property in question beyond that which is possessed by people generally.* An officer, or shareholder of a closely held corporation who has acquired knowledge of the corporate property tantamount to that of an owner by virtue of having purchased, or dealt with, the property as if he were the individual owner may testify as to its value.

(Emphasis added.) *Id.* at 627.

{¶ 28} In *Tokles*, the corporation had emphasized the witness's status as an officer and shareholder in order to establish his connection to the corporation as property owner—indeed, in *Tokles* the corporation was (in a nontechnical sense) an alter ego of the officers/shareholders. The BTA's pronouncements are therefore couched in terms of officer and shareholder.

{¶ 29} But nothing in the reasoning of *Tokles* precludes a corporate employee from qualifying to give owner testimony. To the contrary, under *Tokles* it is the degree of acquaintance with the property rather than the rank within the corporate entity that is most significant. Indeed, in a company with a larger staff that is less closely held than that in *Tokles*, employees below the officer level may be more likely to have the intimate knowledge concerning the property that would best qualify them to give the owner-opinion testimony.

b. The employee of a corporate affiliate may give owner-opinion testimony when the corporate-affiliate actually manages the property

{¶ 30} The BTA also found it significant that Carroll was employed by Midamco rather than Northpointe Distribution Center, L.L.C.: the latter owns the property, while the former owns the latter and manages the property. But for purposes of the owner-opinion rule, that is a distinction without a difference.

11

**{¶ 31}** The testimony shows that Midamco managed the property and was the owner of Northpointe, the sole purpose of whose existence was to hold title to the property for Midamco. In *Tokles*, the court held that "the benefit of the owner-opinion rule should not be denied to a closely held corporation which cannot speak itself but which can convey its owner-opinion by a qualified officer." 65 Ohio St.3d at 627, 605 N.E.2d 936. The very same logic dictates that the benefit of the rule should not be denied when title to the property is held through a corporate affiliate, so long as an officer or employee associated with and knowledgeable about the management of the property is available to convey the owner opinion.

**{¶ 32}** For these reasons, we reverse the BTA's determination that Carroll's testimony coupled with the written income-approach valuation was not competent evidence of value. Having decided that the evidence was competent, we now turn to the BTA's consideration of its probative character.

### UNDER THE *BEDFORD* RULE, THE BTA MAY NOT REVERT TO THE AUDITOR'S VALUE WHEN THE BOR RELIED ON COMPETENT EVIDENCE

**{¶ 33}** The BTA held that the owner's opinion of value herein did not provide competent, probative evidence of value. In addition to erroneously finding that the evidence was incompetent, the BTA also pointed to the complete absence of market data for income and expenses as a reason for concluding that the opinion lacked probative force.

**{¶ 34}** In reviewing this latter aspect of the BTA's decision, we note that the BTA unquestionably had a duty to independently weigh all the evidence before it, which in this case consisted of evidence adduced before the BOR. *See Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 76 Ohio St.3d 13, 15, 665 N.E.2d 1098 (1996); *Sapina v. Cuyahoga Cty. Bd. of Revision*, 136 Ohio St.3d 188, 2013-Ohio-3028, 992 N.E.2d 1117, ¶ 25, citing *Vandalia-Butler City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 130 Ohio St.3d 291,

2011-Ohio-5078, 958 N.E.2d 131, ¶ 13. Moreover, the BTA correctly pointed out that market data ordinarily constitutes an essential part of a valid appraisal based on the income approach. *See Villa Park Ltd. v. Clark Cty. Bd. of Revision*, 68 Ohio St.3d 215, 218, 625 N.E.2d 613 (1994) (BTA decision reversed and case remanded to the BTA for findings of "the appropriate economic or market rents and expenses to be used in the income approach to value"); International Association of Assessing Officers, Property Assessment Valuation 204, 214 (2d Ed.1996). Thus, the BTA was correct to criticize the owner's opinion of value for its lack of market data.

{¶ 35} Because it found the owner's valuation to be not probative, and because it confronted an absence of additional evidence, the BTA ordered that the auditor's value be reinstated. While this is a logical disposition, the BTA nonetheless erred in rendering it. That is so, because our decision in *Bedford Bd. of Edn.*, 115 Ohio St.3d 449, 2007-Ohio-5237, 875 N.E.2d 913, prescribes a different rule under these circumstances: when the board of revision has reduced the value of the property based on the owner's evidence, that value has been held to eclipse the auditor's original valuation.

{¶ 36} In *Bedford*, as here, the owner presented an owner's opinion of value using the income approach and utilizing actual income and expenses. Even though the owner's opinion relied entirely on income and expenses of the subject property, rather than data derived from the larger market, we held in a four-to-three decision that the BTA had erred by reverting to the auditor's valuation inasmuch as the owner's evidence (despite those defects identified by the BTA) had negated that valuation.

{¶ 37} Our reasoning in *Bedford* does not deny the BTA's duty to independently evaluate the evidence; instead, it alters the status of the auditor's valuation as a default in the situation where neither the property owner nor the board of education has proved a different value. We have held that although a

BOE or a property owner seeking to depart from the county's valuation must shoulder the burden of showing a different value, "the board of revision and the auditor do not themselves acquire the burden of proving the general accuracy of the appraisals upon which they initially relied." *Colonial Village Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 31. As a result, "[t]he county's appraised value * * * forms in most cases a default valuation that must be preferred and adopted if the appellant before the BTA fails to prove a different value of the property * * *." *Id. Accord Salem Med. Arts & Dev. Corp. v. Columbiana Cty. Bd. of Revision*, 82 Ohio St.3d 193, 195, 694 N.E.2d 1324 (1998) ("In the absence of probative evidence of a lower value, however, the BOR and the BTA are justified in fixing the value at the amount assessed by the county auditor").

{¶ 38} Notably, however, the absence of a requirement that *the auditor or board of revision* offer proof of the original appraised value does not automatically mean that *the property owner or the board of education* may rely on that appraised value as a default. To be sure, if a board of revision makes a valuation change that is completely unsupported in the record, the BTA may not affirm or adopt it. *See Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 90 Ohio St.3d 564, 567, 740 N.E.2d 276 (2001) (the BTA errs by affirming a board of revision's reduced or increased valuation if "there is no evidence or other information in the statutory transcript to explain the action taken by the BOR"). But the *Bedford* rule addresses circumstances in which the board of revision relies on specific and plausible evidence to reach a valuation different from that originally found by the auditor.

{¶ 39} The *Bedford* rule is particularly applicable in circumstances like those presented here. In this case, the BOE opposed the owner's opinion of value and could have stated before the BOR the reasons that it should not adopt that valuation, but it failed to do so. In this respect, the present case differs

dramatically from *Vandalia-Butler*, 130 Ohio St.3d 291, 2011-Ohio-5078, 958 N.E.2d 131. Here the BOE failed to inform the BOR of reasons why the owner's opinion was not competent or probative, whereas in *Vandalia-Butler* the board of revision's notes "reflect[ed] that the BOE objected to the appraisal report as hearsay 'because the appraiser wasn't [at the hearing] to question.' " *Id.* at ¶ 4-5. *Compare Plain Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 130 Ohio St.3d 230, 2011-Ohio-3362, 957 N.E.2d 268, ¶ 18-20 (hearsay objection to written appraisal report was waived because it was not raised before the board of revision).

{¶ 40} Moreover, Northpointe actually presented Carroll as a witness before the BOR, thereby making him available for cross-examination, but the BOE's counsel failed to use that opportunity to build a record that would have permitted the BOE to "meet its burden of proof before the BTA by showing— through cross-examination of [the witness] * * * —that the board of revision had erred when it reduced the value from the amount first determined by the auditor." *Vandalia-Butler City School Dist. Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 106 Ohio St.3d 157, 2005-Ohio-4385, 833 N.E.2d 271, ¶ 9.

{¶ 41} In sum, the rule from the *Bedford* case precluded the BTA's reverting to the auditor's valuation in spite of the BTA's findings about the probative force of the evidence that Northpointe presented at the BOR. Under these circumstances, the BOR's adopting a new value based on Carroll's testimony "shift[ed] the burden of going forward with evidence to the board of education on appeal to the BTA." *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 193, 2013-Ohio-4543, 11 N.E.3d 206, ¶ 16, analysis regarding burden undisturbed on reconsideration, 139 Ohio St.3d 212, 2014-Ohio-1940, 11 N.E.3d 222, ¶ 10. Since no new evidence was presented at the BTA, the BTA should have retained the BOR's valuation of the property.

## CONCLUSION

**{¶ 42}** We reverse the BTA's determinations regarding the competence of Carroll's testimony and the owner's opinion of value offered at the BOR. Additionally, we reverse the BTA's decision to revert to the auditor's valuation, with the result that the BOR's valuation of the property is reinstated.

Decision reversed.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, KENNEDY, and O'NEILL, JJ., concur.

LANZINGER and FRENCH, JJ., dissent.

_____

**LANZINGER, J., dissenting.**

**{¶ 43}** I dissent from the majority's expansion of the owner-opinion rule to allow employees of a corporation to provide evidence of a property's value, and I would affirm the decision of the Board of Tax Appeals that reinstated the auditor's valuation.

FRENCH, J., concurs in the foregoing opinion.

_____

Rich & Gillis Law Group, L.L.C., Mark H. Gillis, Karol C. Fox, and Kelley A. Gorry, for appellee Worthington City Schools Board of Education.

Sleggs, Danzinger & Gill, Co., L.P.A., Robert K. Danzinger, and Todd W. Sleggs, for appellant.

_____