[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2015-Ohio-3633.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-3633

COLUMBUS CITY SCHOOLS BOARD OF EDUCATION, APPELLANT, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* Slip Opinion No. 2015-Ohio-3633.]

*Taxation—Property —Valuation  Board of Tax Appeals did not err in adopting owner's evidence of value—Appraiser's use of tax additur was appropriate— Appraiser's dollar-for-dollar deduction of cost to cure deferred-maintenance problems was supported by record—*Bedford *rule prevents BTA from reinstating auditor's valuation when board of revision rejected that valuation based on competent evidence.*

(No. 2014-0723—Submitted April 14, 2015—Decided September 9, 2015.)

APPEAL from the Board of Tax Appeals, No. 2011-2109.

_____

**Per Curiam.**

**{¶ 1}** This case concerns the tax-year 2008 valuation of a 221,720-square-foot office-warehouse building in west Columbus. At the property owner's instigation, appellee Franklin County Board of Revision ("BOR") reduced the value assigned to the property from the $2,750,000 found by the auditor to the $1,520,000 advocated in an appraisal that the owner had submitted. The Columbus City Schools Board of Education ("BOE") appealed to the Board of Tax Appeals ("BTA"), which, with no new evidence before it, affirmed the BOR's determination.

**{¶ 2}** On appeal, the BOE renews its twofold criticism of the property owner's appraisal. First, the BOE contends that the appraiser improperly used a "fully loaded" tax additur instead of one adjusted in light of a putative tenant's tax obligations under a triple net lease. Second, the BOE faults the appraisal for using a bottom-line or "dollar for dollar" deduction of the cost to the purchaser for necessary repair or replacement of the roof and the HVAC for the building. Additionally, the BOE faults the BTA's opinion for certain deficiencies that the BOE claims render the decision unreasonable and unlawful.

**{¶ 3}** We disagree with all of the BOE's claims of legal error, and we therefore affirm the decision of the BTA.

### FACTUAL BACKGROUND

**{¶ 4}** The office-warehouse building at issue is a brick-and-concrete structure that was constructed in 1957 and is located on 13.35 acres. It consists of 15,000 square feet of general office space and 2,500 square feet of operational office space and has five restrooms. The warehouse facility has 23 dock doors and 3 drive-in doors.

**{¶ 5}** The lay witness James Thomas was familiar with the property's history, having served its original owner, International Harvester, back in the 1970s. At the time of the hearing before the BOR, Thomas was leasing agent for

2

the owner and was also attempting to sell it on the owner's behalf. At the BOR, Thomas broadly testified as to two bases for the reduction advocated by the owner: the rents received from the property and the repairs necessary to "even give it some value." Later in the hearing, Thomas testified about the limited market for the building, explaining that the overhead clearance was less than is currently favored, and the pool of purchasers would most likely be limited to those who intend to occupy the property rather than lease it out. Indeed, the highest rent Thomas had procured was $1.50 per square foot, on a gross-lease basis.

{¶ 6} Andrew Moye, a state-certified appraiser, member of the Appraisal Institute, and principal of the Crown Appraisal Group, prepared a written report appraising the property as of the tax-lien date, January 1, 2008. He also testified in support of that report at the BOR hearing. The appraisal considered and rejected the cost approach given the building's age. The report then undertook a sales-comparison and an income-capitalization approach, but favored the sales-comparison approach, primarily because the outdated configuration of the building would tend to attract buyers who would be occupants rather than landlords. As comparable sales, Moye selected owner-occupied buildings.

{¶ 7} Moye also testified that the property had three deferred-maintenance deficiencies as of January 1, 2008, that would affect the sale price; they were enumerated at page 17 of the appraisal report:

- The roof had multiple leaks and needed to be replaced;
- The heating, ventilation, and air-conditioning system ("HVAC") needed to be replaced because (i) the AC was inoperable, (ii) the heating was highly inefficient, and (iii) the boilers had mechanical problems; and
- The fire-suppression system was inoperable and needed to be replaced.

**{¶ 8}** Using numbers from the Marshall & Swift valuation service, Moye estimated the cost of resolving these problems to be $700,000. However, upon examination by the BOR members, the lay witness Thomas weighed in and pronounced that estimate to be low: the needed repairs would extend beyond the three items and would amount to $1.2 million.

**{¶ 9}** Moye selected three sales as being most comparable, then made appropriate adjustments because of remaining differences. From the sales-comparable analysis Moye derived a valuation of $2,220,000, from which he deducted the $700,000 cost to cure the deferred maintenance.

**{¶ 10}** Moye next developed a valuation under the income-capitalization approach, but declared that method to be merely secondary and supportive of the sales-comparison approach given that the building would most likely be owner-occupied. After developing market-rent analysis and deriving net operating income, Moye capitalized the income and deducted the $700,000 cost to cure the deferred-maintenance deficiencies to arrive at a valuation of $1,490,000.[1] Later, Moye opined that he should have deducted a higher amount under the income-capitalization approach in order to account for entrepreneurial incentive. That would have lowered the valuation even further.

**{¶ 11}** Moye reconciled the various approaches by adopting the sales-comparison approach valuation of $1,520,000 for the property.

### COURSE OF PROCEEDINGS

**{¶ 12}** The property owner, 3600 Sullivant Avenue, L.L.C., filed its complaint against valuation for tax year 2008 on March 31, 2009, seeking a reduction from the auditor's valuation of $2,750,000 to $2,400,000. The property was later sold to appellee Sullivant Holdings, L.L.C. ("Sullivant"), which was

---

[1] In relation to the tax-additur issue raised by the BOE, it is important to note that both the appraisal and the hearing testimony establish that on the lien date and at all times the property at issue was leased on a gross, not a net basis.

substituted as the complainant in early 2011. At the BOR hearing on May 24, 2011, Sullivant amended its complaint to request the value of $1,520,000 in accordance with Moye's appraisal report. The BOR adopted the appraisal valuation of $1,520,000, and the BOE appealed to the BTA.

{¶ 13} At the BTA, the parties presented no new evidence, relying instead on briefs and the existing record certified by the BOR. The BOE advanced two claims of error in the BOR's adoption of the owner's appraisal: it faulted the use of the "fully loaded" tax additur on property that was valued on a net-lease basis, and it contested the dollar-for-dollar deduction for repairs as being unsupported and contrary to appraisal practice. The proper relief, according to the BOE, was reversion to the auditor's original valuation of $2,750,000.

{¶ 14} The BTA issued its decision on April 10, 2014, in which it affirmed the BOR's adoption of the owner's appraisal valuation. Citing recent case law for the proposition that the BOE had the burden of going forward with the evidence, the board implicitly concluded that the BOE failed to sustain that burden. Turning to the BOE's critique of Sullivant's appraisal evidence, the board "acknowledge[d] the arguments made by the appellant" and responded to them by stating that the appraiser had to "make a wide variety of subjective judgments in selecting the data to rely upon, effect adjustments deemed necessary to render such data usable, and interpret and evaluate the information gathered in forming an opinion." On this basis, the BTA affirmed. BTA No. 2011-2109, 2014 Ohio Tax LEXIS 2290 (Apr. 10, 2014).

{¶ 15} The BOE has appealed, and we now affirm.

### ALLEGED DEFECTS IN THE WORDING OF THE BTA'S DECISION DO NOT ESTABLISH IT TO BE UNREASONABLE OR UNLAWFUL

{¶ 16} The BOE's first and second propositions of law take aim at formal aspects of the BTA opinion. First, the BOE argues that the opinion in this case was crafted using a preprinted form the BTA has adopted for use in a broad range

of cases. The result, the BOE alleges, is a generic opinion that purports to resolve the appeal without any consideration of its unique facts and issues. According to the BOE, the form of decision is defective as a matter of law because it relieves the BTA of its obligation to "hear and decide" the appeal.

{¶ 17} Moreover, the BOE argues that the BTA based its finding that the appraisal report was "probative" on three irrelevant factors. Here is the allegedly offending passage from the BTA decision:

> Upon review of appellee's appraisal evidence, which provides an opinion of value as of tax lien date, was prepared for tax valuation purposes, and attested to by a qualified expert, we find the appraisal to be competent and probative and the value conclusion reasonable and well-supported.

BTA No. 2011-2109, 2014 Ohio Tax LEXIS 2290, *4. According to the BOE, this sentence "violates well-settled law that requires a property owner to present 'competent and probative' evidence that proves the true value of its property." The reason is that "none of the BTA's three criteria * * * have anything to do with the 'probative' nature of the appraisal evidence, nor are they even relevant in deciding whether an appraisal is 'reasonable and well-supported.' "

{¶ 18} We find that although the BTA decision is undeniably terse, and although its discussion of the evidence and the arguments probably falls short of the expository ideal to which the agency ought to aspire, the statements challenged by the BOE do not establish that the decision is unreasonable or unlawful.

{¶ 19} Contrary to the BOE's suggestion, the BTA does not equate the factors that it cites with the probative nature of the appraisal. Instead, it lists the factors, and then makes its finding that the appraisal is probative. Further,

contrary to the BOE's suggestion, the factors explicitly identified by the BTA are not wholly irrelevant to the probative character of the appraisal. For example, the fact that an expert appraiser expresses an opinion of value *as of the tax-lien date* is not completely irrelevant to the question whether his opinion properly estimates true value as of that very date.

{¶ 20} In its second proposition of law, the BOE takes issue with the following passage:

> While we acknowledge the arguments made by the appellant, inherent in the appraisal process is the fact that an appraiser must necessarily make a wide variety of subjective judgments in selecting the data to rely upon, effect adjustments deemed necessary to render such data usable, and interpret and evaluate the information gathered in forming an opinion.

BTA No. 2011-2109, 2014 Ohio Tax LEXIS 2290, *4.

{¶ 21} The BOE seizes upon the BTA's term "subjective judgments" and proclaims that by using the term, the BTA's decision contradicts various aspects of the law relating to real property assessment. Perhaps "subjective" is the wrong word in this context, but the BTA's intent is to convey the element of personal judgment involved in forming an expert opinion of value. Accordingly, we hold that the mistake of using the word "subjective" does not invalidate the BTA's decision. The appraisal report and testimony rely on objective data duly collected and evaluated in accordance with Moye's professional expertise. R.C. 5717.04 confines our review of the BTA's decision to the reasonableness and lawfulness of its substance, and on that basis we find no grounds for reversal in either the first or the second propositions of law advanced by the BOE.

## THE BTA IS NOT REQUIRED TO ISSUE FORMAL FINDINGS OF FACT AND
## CONCLUSIONS OF LAW

{¶ 22} The BOE's third proposition of law faults the BTA for not "set[ting] forth the relevant facts in its decision." The starting point for evaluating this proposition is the case law establishing that as a general matter, the BTA has no obligation to make particularized findings of fact and conclusions of law. *See Wolf v. Cuyahoga Cty. Bd. of Revision*, 11 Ohio St.3d 205, 206, 465 N.E.2d 50 (1984) (rejecting the argument that "the failure of the BTA to render specific findings of fact and conclusions of law renders the decision *per se* unreasonable and unlawful" and observing that "this court has found no authority which places a mandatory duty upon the BTA to make separate findings of fact and conclusions of law"); *Wheeling Steel Corp. v. Evatt*, 143 Ohio St. 71, 96, 54 N.E.2d 132 (1944) ("There is no authority for [a] request for findings of fact and conclusions of law separately stated").

{¶ 23} The BOE invokes other cases in which the court held that the BTA had the duty to "state what evidence it considered relevant in reaching its value determinations," but those cases are inapposite. In *Howard v. Cuyahoga Cty. Bd. of Revision*, 37 Ohio St.3d 195, 197, 524 N.E.2d 887 (1988), this court reversed the BTA's decision because the BTA failed to specify whether it relied on sale-price evidence or the evidence of one of the two appraisers who testified in that case. In *HealthSouth Corp. v. Levin*, 121 Ohio St.3d 282, 2009-Ohio-584, 903 N.E.2d 1179, ¶ 34 (citing and applying *Howard*), this court vacated the BTA's decision because the BTA did not properly evaluate the evidence. The court faulted the BTA's conclusory statement that nothing in the record indicated any impropriety in the taxpayer's methodology supporting its refund claim and the BTA's failure to state what evidence it considered relevant in reaching its determination. *Id.* at ¶ 32-36.

**{¶ 24}** Quite simply, there is no such problem in this case. Here, the BTA relied on the only appraisal evidence before it, and it said so. We reject the BOE's third proposition of law.

### THE ALLEGED ERRORS IN THE APPRAISAL FURNISH NO BASIS FOR REVERSAL

**{¶ 25}** The BOE's fourth proposition of law is that the BTA "cannot accept an appraisal report that contains errors that affect the appraiser's opinion of value." Two such errors are alleged here, a reiteration of the arguments advanced at the BTA. Neither has merit.

*1. The tax additur is neither consequential nor clearly erroneous*

**{¶ 26}** The first alleged error concerns Moye's income approach, and specifically the "tax additur." What is the tax additur? It is a component of the capitalization rate that accounts for the negative effect that property taxes have on the value of the property.

**{¶ 27}** The income approach to valuing property envisions a purchaser figuring out how much she is willing to pay for a property based on a particular stream of income that she might expect to realize from the property. Property taxes are an expense that offsets income, so the taxes reduce the value of the property under the income approach. On the other hand, if the lessee pays the taxes under a "net lease" arrangement, then the purchaser might not need to reduce the expected lease income by the amount of property-tax payments.

**{¶ 28}** Under the income approach, the appraiser determines the "economic" or market rent for the property at issue—referred to as the "subject property"—by looking at the income and the expenses of comparable properties. When the expenses from the comparable sales are tallied, the property tax is disallowed as an expense. To project the effect of property taxes on the subject property, the appraiser develops an adjustment—here, the "tax additur"—which reflects the "effective tax rate" for the subject property; this percentage then is added in and becomes a component of the capitalization rate. *See Worthington*

*City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* 140 Ohio St.3d 248, 2014-Ohio-3620, 17 N.E.3d 537, ¶ 8, fn. 2. As a result, once the net income figure—the market rent less allowable expenses—is divided by the capitalization rate to arrive at the estimate of value, that value is lower because the capitalization rate has been increased by the amount of the effective tax rate.

{¶ 29} The BOE claims that Moye's income approach wrongly computed and applied the tax additur. The BOE argues that, because the property involved a net lease under which the tenant pays property taxes, the additur should not have been applied or should have been "weighted," i.e., adjusted to reflect only that portion of taxes paid by the landlord that are unreimbursed by the tenant.

{¶ 30} Even assuming that the use of the "fully loaded," or unweighted, additur was error, it was harmless. Quite simply, the appraiser Moye regarded the income approach as eclipsed in importance by the sales-comparison approach, on which the appraiser placed his reliance. It follows that any error in the tax additur is harmless error for purposes of this appeal.

{¶ 31} In opposition to this point, the BOE plausibly contends that even though Moye's income approach was secondary, it was not wholly irrelevant. Had the income-method valuation been substantially larger, it would have affected Moye's willingness to adopt the figure generated by the sales-comparison method, so the argument goes. But this argument too is unavailing, because Moye's use of a full tax additur was not shown to be clearly erroneous.

{¶ 32} The lease was not a net lease as of the tax-lien date, January 1, 2008. At page 19, the appraisal report addresses the lease situation as of that date. There was a single tenant as of that date, and under the lease *the landlord was responsible for paying taxes*. At page 8 of the appraisal report, Moye discusses the rent comparables and terms those leases "net"—but notably *not the lease on the subject property*. At page 11, Moye notes that the subject property lease is "modified gross" with the landlord remaining responsible for taxes, insurance,

and "roof/structural." Because the lease arrangement was gross rather than net with respect to property taxes, the use of a fully loaded tax additur was not inappropriate.

{¶ 33} In support of its claim of error, the BOE cites *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, BTA Nos. 2010-Q-845 through 2010-Q-848, 2013 WL 4047278, *7 (July 31, 2013). But *Hilliard City Schools* demonstrates that the BOE is mistaken in this case.

{¶ 34} In *Hilliard City Schools*, the BTA recited the board of education's argument and concluded that it was correct:

> As to Mr. Smith's appraisal of Spiegel Road, the BOE argues that he improperly used a fully-loaded tax additur in his income capitalization approaches, even though he acknowledged that *the subject properties* are leased on a triple net basis. The BOE asserts that the use of a full tax additur therefore improperly decreases the total value conclusion, and that, rather, Mr. Smith should have only accounted for the taxes for which the owner would be liable, i.e., for the vacant portion of the property. * * * We agree with the BOE and find that the value resulting from the revised tax additur is a better indication of value.

(Emphasis added.)

{¶ 35} What is noteworthy in *Hilliard City Schools* is the nature of the argument advanced by the board of education there and accepted by the BTA: the issue was whether the *subject property* is subject to a net lease, not whether the *comparables* are. The situation is this case is the opposite of that in *Hilliard City Schools*. Whereas a fully loaded tax additur was held improper there because the landlord did not pay all the taxes, here the landlord did pay all the taxes, with the

result that a fully loaded additur was entirely proper. Thus, even by its own terms the BOE's argument does not establish that the tax additur in this case was clearly erroneous. And it is debatable whether an error in appraisal technique makes the adoption of the appraisal unreasonable or unlawful; but we do not reach that question here because the BOE has not unequivocally shown a violation of appraisal principles.

2. *The "bottom-line deduction" was factually supported and not shown to be in conflict, either with established appraisal practices or with the case law*

**{¶ 36}** The BOE contests the "dollar for dollar" or "bottom-line" deduction of $700,000 for the cost to cure deferred-maintenance problems—specifically, a new roof, a new fire-suppression system, and new HVAC. But the need for the adjustment is well supported by the record. The expert testimony of Moye was supported in this respect by the fact testimony of James Thomas, a consultant who had worked extensively with the property as the leasing agent of its owner. Thomas testified that Moye's figure of $700,000 was "well short"; that something like $1.2 million in immediate expenditures would be necessary to cure deferred maintenance.

**{¶ 37}** Moreover, there is no question that the cost to cure deferred-maintenance problems can affect property valuation; the only question is the manner in which the computation is performed. *See* Appraisal Institute, *Appraisal of Real Estate* 331-332 (13th Ed.2008) (when a comparable sale involves such "expenditures made immediately after purchase," the sale price of the comparable is adjusted upward if the buyer and seller contemplated the expenditures at the time of sale; conversely, the value of the comparables is adjusted downward when it is the subject property that needs the expenditures).

**{¶ 38}** The BOE cites two court decisions that it claims militate against the deduction: *Hotel Statler v. Cuyahoga Cty. Bd. of Revision*, 79 Ohio St.3d 299, 681 N.E.2d 425 (1997); *Gen. Motors Corp. v. Cuyahoga Cty. Bd. of Revision*, 74

12

Ohio St.3d 513, 660 N.E.2d 440 (1996). The BTA in those cases rejected a dollar-for-dollar deduction of the cost of repairs because the taxpayer had not presented evidence supporting the deduction. But those cases do not furnish a basis for reversing the BTA here for three reasons.

{¶ 39} First, unlike the present case, those cases reflect this court's deference to the BTA's fact-finding. This court was not stating that the BTA was correct in rejecting the deduction; it was stating that the BTA had not abused its discretion in doing so. By contrast, the BOE is asking this court to reverse the BTA's fact-finding here. To convert those cases into a principle for reversal here, the BOE would need to identify a legal precept that was violated in the present case. It has not done so.

{¶ 40} Second, the cases are factually inapposite. In both, the remediation involved asbestos, and no evidence was presented that the cost of removing asbestos had any effect on value. *Hotel Statler* at 303; *Gen. Motors* at 515. By contrast, the BOR and the BTA could reasonably presume that the cost of replacing a leaky roof and nonfunctional HVAC has a definite, immediate, and quantifiable effect on property value—particularly in light of the BOR testimony. (Additionally, in *Hotel Statler* the BTA found and the court affirmed that the cost figure was not well supported; here, the testimony does support the cost to cure.)

{¶ 41} Third, *Hotel Statler* involved the appraiser's heavy emphasis on the income approach. The sales-comparison approach was used only to "support the range of value indicated by [the appraiser's] use of the income approach," because the appraiser thought that "none of the recent sales of property located near the subject were truly comparable to the subject." BTA No. 94-S-264, 1996 WL 368239, *3 (June 28, 1996), *aff'd,* 79 Ohio St.3d 299, 681 N.E.2d 425. In affirming, the court in *Hotel Statler* explicitly criticized the appraiser for making the deduction for asbestos removal "*as though the value under consideration had*

*been determined by the sales comparison approach,* and not the income approach." (Emphasis added.) *Id.* at 303.

**{¶ 42}** This pronouncement, ignored by the BOE, strongly implies that had the appraisal in that case relied on the sales-comparison method (as the Moye appraisal does in this case), the deduction might have been allowable. In any event, the BOE cannot show that any legal precept derived from the case requires reversal in this case.

**{¶ 43}** For all these reasons, we hold that *Hotel Statler* and *Gen. Motors* do not require reversal of the BTA in this case.

### THE BOE FAILED TO SATISFY ITS BURDEN UNDER THE *BEDFORD* RULE

**{¶ 44}** Also unpersuasive is the BOE's attempt at oral argument to avoid the *Bedford* rule, which states that the BTA may not, at the request of a board of education, reinstate the auditor's valuation when a BOR rejected that valuation based on competent evidence. *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 140 Ohio St.3d 248, 2014-Ohio-3620, 17 N.E.3d 537, ¶ 38-41, citing *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 115 Ohio St.3d 449, 2007-Ohio-5237, 875 N.E.2d 913. The BTA can override the *Bedford* rule and reinstate the auditor's valuation when the BOR's decision to reject the auditor's valuation is completely unsupported in the record, *see Worthington City Schools* at ¶ 38, citing *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 90 Ohio St.3d 564, 567, 740 N.E.2d 276 (2001), or when the party challenging the BOR's action presents evidence that the auditor's valuation is more accurate than the BOR's.[2] The BOE in this case has done neither. Therefore, the BTA cannot reinstate the auditor's valuation.

---

[2] We need not address the question whether the BOE sufficiently objected at the BOR hearing to avoid the *Bedford* rule, see *Worthington City Schools* at ¶ 39, because the BOE has failed to undermine the appraisal adopted by the BOR. As a result, the BOE would not prevail in this appeal even if the *Bedford* rule did not apply.

## CONCLUSION

**{¶ 45}** For the foregoing reasons, we reject the BOE's claims of error and affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

————————————

Rich & Gillis Law Group, L.L.C., and Mark Gillis, for appellant.

McFadden & Winner, Mary Jane McFadden, and Joseph C. Winner, for appellee Sullivant Holdings, L.L.C.

————————————